**ALBINA WILLIE, Personal Representative of the ESTATE OF TERENCE WILLIE, Plaintiff**

**v.**

**AMERADA HESS CORPORATION; HESS OIL VIRGIN ISLANDS CORPORATION, LITWIN CORPORATION; and UNIVERSAL OIL PRODUCTS also known as U.O.P., Defendants**

**LITWIN CORPORATION, Third-Party Plaintiff**

**v.**

**SHELL OIL COMPANY; RIGGERS & ERECTORS INTERNATIONAL, INC.; COMMUNICATION SYSTEMS AND MAINTENANCE CORPORATION; VIRGIN ISLANDS INDUSTRIAL MAINTENANCE CORPORATION; CHICAGO BRIDGE & IRON COMPANY, N.V. (individually and as successor in interest to CHICAGO BRIDGE & IRON) and A.P. GREEN SERVICES, INC. (individually and as successor in interest to BIGELOW-LIPTAK CORPORATION), Third-Party Defendants**

Case No. SX-06-CV-202

Superior Court of the Virgin Islands

Division of St. Croix

February 28, 2017

24

THOMAS ALKON, ESQ., Law Office of Thomas Alkon, Christiansted, USVI; JERRY H. EVANS, ESQ., Mt. Pleasant, SC, *Attorneys for Plaintiff.*

PAUL R. NEIL, ESQ., Barnes & Neil LLP, Christiansted, USVI, *Attorney for Defendants Amerada Hess Corporation and Hess Oil Virgin Islands Corporation.*

W. MARK WILCZYNSKI, ESQ., Law Office of W. Mark Wilczynski, P.C., St. Thomas, USVI; JAMES L. HYMES, III, ESQ., Law Office of James L. Hymes, P.C., St. Thomas, USVI, *Attorneys for Defendant/Third-Party Plaintiff Litwin Corporation.*

RICHARD H. HUNTER, ESQ., Hunter & Cole, Christiansted, USVI, *Attorney for Defendant Universal Oil Products.*

KEVIN A. RAMES, ESQ., SEMAJ I. JOHNSON, ESQ., K.A. Rames, P.C., Christiansted, USVI, *Attorneys for Third-Party Defendant Shell Oil Company.*

THOMAS G. KRAEGER, ESQ., Sanford, Amerling & Associates, Christiansted, USVI, *Attorney for Third-Party Defendants Riggers & Erectors International, Inc. and Virgin Islands Industrial Maintenance Corporation.*

MARK D. HODGE, ESQ., Hodge & Hodge, St. Thomas, USVI, *Attorney for Third-Party Defendant Chicago Bridge & Iron Company, N.V.*

HINDS ROACH, *Judge.*

## MEMORANDUM OPINION

### (February 28, 2017)

**THIS MATTER** is before the Court on a motion filed by Defendant/Third-Party Plaintiff Litwin Corporation to dismiss the counterclaims Shell Oil Company, a Third-Party Defendant, asserted in its answer to Litwin's third-party complaint. Litwin sued Shell and other third-party defendants for contribution and indemnification and Shell counterclaimed for the same relief (contribution and indemnification) and set-off. Ten years later, Litwin moved to dismiss Shell's counterclaims. Shell opposed. Because trial is slated for next month, the Court issued an order, granting and denying Litwin's motion in part. This opinion now follows to provide the basis for the Court's decision.

31

## FACTUAL AND PROCEDURAL BACKGROUND

Terence[1] Willie filed a complaint in the Superior Court on March 15, 2006 for damages. He named as defendants Amerada Hess Corporation ("Hess"), Hess Oil Virgin Islands Corporation ("HOVIC"), Litwin and Universal Oil Products ("UOP"). In his complaint, Mr. Willie alleged that he worked at the HOVIC oil refinery on St. Croix and "was continuously exposed to both finished and unfinished asbestos products, catalyst, dust, particles, and fibers as well as toxic substances." (Compl. ¶ 7.) He further alleged that "Defendants were at all times relevant . . . installers, suppliers, and distributors of milled asbestos fibers, dust and particles and other finished and unfinished asbestos products and process designers and inspectors of refinery systems." Id. ¶ 12. Defendants were also negligent, Mr. Willie alleged, in "distribut[ing] . . . the aforesaid . . . products to . . . [his] place of employment without warning about the potential dangers of the use of these asbestos products and failed to warn of the propensity of these [products] to cause injuries and damage." Id.

Each of the defendants appeared and answered Mr. Willie's complaint. In its answer, Litwin denied liability and admitted none of the facts Mr. Willie alleged. Litwin also asserted affirmative defenses, one of which was that "[t]he product(s) alleged by plaintiff to have been supplied by Defendant Litwin was neither dangerous nor defective, and it was of merchantable quality and fit and safe for its intended use." (Litwin's Ans. 9, ¶ 32, filed Mar. 21, 2006.) The same day, March 21, 2006, Litwin filed a cross-claim[2] against UOP for indemnity and contribution and also a third-party complaint, later amended to correct the naming of one of the third-party defendants. Litwin, as third-party plaintiff, sued Shell, Riggers & Erectors International, Inc. ("Riggers"), Communication Systems & Maintenance Corporation ("CSMC"), Virgin Islands Industrial Maintenance Corporation ("IMC"), Chicago Bridge & Iron Company, N.V. ("CBIC"), and (after amendment) A.P. Green Services, Inc. ("A.P. Green"). CBIC and A.P. Green were also named in their successor capacities to other companies. UOP responded to Litwin's cross-claim by cross-claiming against Litwin for the same relief: contribution and indemnity. Similarly, Shell, IMC, and Riggers answered

---

[1] Also spelled as Terrence or Terrance in some filings.

[2] Pursuant to Superior Court Rule 34, all "cross-actions" are referred to as counterclaims.

Litwin's third-party complaint and counterclaimed against Litwin for the same relief (contribution and indemnification) and set-off.

In its third-party complaint, Litwin expressly incorporated Mr. Willie's allegations (*see* Litwin's Am. Third-Party Compl. ¶ 9, filed Apr. 19, 2006), and alleged that all of the third-party defendants, including Shell, "were . . . millers, manufacturers, contractors, installers, purveyors, suppliers, and distributors of asbestos, catalyst, silica or other harmful and hazardous toxic dusts or substances that Plaintiff claims he was exposed to on St. Croix." *Id.* ¶ 11. Litwin further alleged that the third-party defendants "manufactured or supplied defective or unreasonably dangerous . . . asbestos, catalyst or silica products to the Refinery" and, "[a]s a result . . . Third-Party Plaintiff and Third-Party Defendants may both be liable to the Plaintiff." *Id.* ¶ 13.

In answering Litwin's third-party complaint, Shell admitted "that on various occasions it has supplied catalyst to the . . . refinery located on St. Croix" and "supplied catalyst to HOVIC for use in HOVIC's refinery." (Shell's Ans. & Countercl. ¶¶ 11, 13, filed July 31, 2006 ("Ans. & Countercl.").) But Shell denied Litwin's claim that it manufactured or supplied defective, harmful, or toxic substances. *See id.* ¶ 13. Among other affirmative defenses, Shell alleged that Litwin's third-party action is

> barred, in whole or in part, by the unforeseeable misuse and abuse of the products, if any, by the Plaintiff and others under the circumstances then and there existing, and the failure of the Third-Party Plaintiff to prohibit such use, which misuse and abuse directly and proximately caused and contributed to Plaintiff's . . . damages, if any.

*Id.* at 6. Shell also contended that Litwin "is barred from recovery against Shell . . . because any product or material supplied by Shell . . . was done so pursuant to the specification and order of HOVIC and/or Third-Party Plaintiff" Litwin. *Id.* at 7. Shell also counterclaimed that it was Litwin who "designed, wrote specifications, placed orders, installed, constructed, maintained and otherwise used or caused others to use toxic substances . . . at the HOVIC refinery." *Id.* at 10, ¶ 3. Litwin further "had the affirmative duty to warn and instruct Plaintiff . . . and others, including Shell, in the use of such products." *Id.* at 10-11, ¶ 3. Shell "was unaware of" any defect in its products during "all times relevant to Plaintiff's Complaint." *Id.* at 11, ¶ 8. Furthermore, "Litwin is . . . under a duty to Shell to protect Shell . . . from the harm and damage caused by the actions of Litwin." *Id.* ¶ 10.

In answering Shell's counterclaims, Litwin denied that it designed or wrote specifications, placed orders, or caused others to use toxic substances. (*See* Litwin's Ans. to Countercl. ¶ 3, filed Aug. 16, 2006 ("Ans. to Countercl.").) Litwin further denied that it "knew [ ]or should have known that any substance or condition contained in any facilities, equipment, products, or materials owned, used or sold by Litw[i]n presented a risk of harm to Plaintiff[ ] or Shell in its normal and foreseeable application or use." *Id.* at 6, ¶ 20.

Mr. Willie passed away on January 13, 2007. A year later, on February 5, 2008, his former attorney filed a petition with the Probate Division of the Superior Court to have Mr. Willie's wife, Albina Willie, appointed as personal representative of her husband's estate. The Clerk's Office docketed the petition, captioned as *In re: Petition for Appointment of Albina Willie as Personal Representative of the Estate of Terrence* [sic] *Willie*, opened a miscellaneous probate matter, numbered SX-08-MP-004, and assigned it to the judge in the Family Division. Two days later, the court granted Mrs. Willie's petition. The Clerk's Office entered the order on February 8, 2008, and then closed the miscellaneous probate matter.

Six weeks later, on March 25, 2008, Mr. Willie's former attorney filed a motion in this case to substitute Albina Willie and have her continue the lawsuit. The Superior Court judge to whom this case was assigned at the time granted the motion by order entered June 10, 2008.

Nearly a year and a half after Mrs. Willie's substitution, she and UOP filed a stipulation on December 2, 2009, agreeing to dismiss her husband's claims against UOP with prejudice. The court approved the stipulation by order dated December 7, 2009 and entered December 8, 2009. For approximately five more years, between the end of 2009 and the beginning of 2015, nothing further was filed in this matter according to the case file and the docket, except for a few notices that discovery was being demanded or produced. But the case file also contains a copy of an order the Administrative Judge, the Honorable Harold W.L. Willocks, issued in another case, *Rupert Williams v. Amerada Hess Corporation, et al.*, case number SX-06-CV-190. In that order, dated June 10, 2014 and entered June 12, 2014, the Administrative Judge noted that approximately fifty cases — all filed in 2006 against the same or mostly the same defendants, and all alleging injuries from workplace exposure to asbestos at the St. Croix oil re-

finery (hereinafter "*Williams* cases") — were pending in the Superior Court, but, as of June 2014, still remained assigned at random to the judges in the Jury Trial Division. However, because counsel for these cases believed they could create a master case themselves and consolidate some of the cases under the master case, it led to internal confusion and delay "as judges and secretaries as well as court clerks and law clerks spent much time trying to determine which cases certain incorrectly-captioned filings belonged to, when an order creating a master case and docket was entered, and if not entered, why the parties were proceeding as though a master docket had been created." The Administrative Judge then ordered that all of the *Williams* cases, not already assigned to him, be reassigned to him pending further review and consideration.

Six months later, the Administrative Judge caused a miscellaneous civil matter to be opened under the caption *In re: Complex Litigation Cases Pending in the District of St. Croix*, case number SX-15-MC-003. Within this miscellaneous matter, the Administrative Judge began holding hearings with counsel for parties in all complex, mass tort cases pending in the St. Croix Division to discuss options for moving the complex cases forward. Concerning this case, the Administrative Judge caused a master case to be opened under the caption *In re: Refinery Workers Toxic Tort Litigation*, case number SX-15-CV-198, and then ordered the *Williams* cases (including this case) along with a few 2008 [and 2011] cases . . . consolidated and reassigned to the Honorable Douglas A. Brady. Subsequently, however, the Administrative Judge, with the consent of the undersigned and the approval of the Presiding Judge, decided upon a category of cases in which the plaintiff was an estate or had died while his case was pending in the Superior Court . . . [for reassignment to] the undersigned judge as the Family Division judge. . . . [T]he Administrative Judge unconsolidated this case from the *Refinery Workers* master case and then reassigned it, among other cases, to the undersigned judge. . . . Since reassignment, additional discovery notices have been filed as well as two stipulations dismissing certain claims with prejudice.

(Order 2-3, entered Aug. 23, 2016 (quoting Order 6, entered June 12, 2014, *Williams v. Amerada Hess Corp., et al.*, SX-06-CV-190 (copy docketed in *Willie* on June 16, 2016)).) *See also In re: Alumina Dust Claims*, SX-09-

35

MC-031, 2017 V.I. LEXIS 2, at *33-36 (Super. Ct. Jan. 10, 2017) (discussing reassignment of "Estate Plaintiff" cases).

In light of this background, this Court, in its August 23, 2016 Order, made the following findings:

> First, concerning the plaintiff, his claims still remain pending against Hess, HOVIC, and Litwin. Mr. Willie's claims against UOP were previously dismissed.... Next, Litwin dismissed its counterclaim against UOP by stipulation filed July 22, 2016. However, UOP's counterclaim against Litwin still remains pending. Therefore, UOP remains a party to this case. Litwin's third-party complaint remains pending against CBIC, Shell, IMC, and Riggers and the counterclaims [that] Shell, IMC, and Riggers asserted against Litwin . . . . Concerning Litwin's claims against CSMC and A.P. Green, however, the Court cannot tell from its review whether these claims are still pending. Neither party has appeared nor has proof of service been filed as to these two third-party defendants. Lastly, the Court notes that a group of plaintiff[s], on March 29, 2016, filed a stipulation under the caption *Gabriel Alexander, et al. v. Hess Oil Virgin Islands Corporation, et al.*, but with the case number assigned to the *Refinery Workers* master case. However, because Mr. Willie's case number was listed within the stipulation, the Clerk's Office docketed the stipulation in this matter and added a copy to the case file. The stipulation is between the plaintiffs (including Mrs. Willie) and IMC and purportedly agrees to a dismissal with prejudice of the plaintiffs' claims against IMC. The concern, however, is that IMC was brought into this case by Litwin. And, while a plaintiff might be able to assert a claim against a third-party defendant, *cf.* FED. R. CIV. P. 14(a)(3), there is no record here that Mr. Willie before his death, or Mrs. Willie after his death, asserted any claim he might have had against IMC. So, in other words, it appears that the March 29, 2016 stipulation may be a nullity as to Mrs. Willie and IMC. If so, the stipulation can simply be dismissed as moot. However, given the confusion articulated by the Administrative Judge in his June 12, 2014 order in *Williams*, and the consolidation of this case under *Refinery Workers* and then its removal, it is conceivable that filings might have been misplaced or misdocketed.

*Id.* at 3-4 (paragraph breaks omitted).

36

The August 23, 2016 Order then directed counsel for plaintiff to clarify whether Mr. Willie had asserted a claim against IMC and how Mr. Willie's first name should be spelled. Litwin was also ordered to file proof of service as to CSMC and A.P. Green. A second order entered the same day scheduled jury selection and trial for March 20, 2017 and ordered the parties to submit a proposed order to complete discovery before trial.

Mrs. Willie and IMC responded on August 29, 2016 and represented that her husband never asserted a claim against IMC.[3] On September 9, 2016, Mrs. Willie, Hess, HOVIC, Litwin, and Shell filed a proposed stipulated scheduling order, which the Court approved on September 19, 2016. Litwin later confirmed, in an October 11, 2016 response, that it had not effected service on CSMC or A.P. Green, so the Court dismissed both third-party defendants for failure to timely serve.

In the interim, on August 31, 2016, Litwin filed its motion to dismiss Shell's counterclaims. After receiving additional time, Shell filed its response on December 14, 2016. To date, Litwin has not filed a reply. By order entered February 16, 2017, the Court granted and denied Litwin's motion in part. This opinion follows to explain the basis for that decision.[4]

## STANDARD OF REVIEW

■ The Court must first address a point neither party raised in their motion papers; to wit, the standard of review applicable here. When one person files a claim against another, the opposing party must respond to the pleading either by filing an answer or a motion. When a party answers another party's pleading, but then moves to dismiss that pleading for failure to state a claim for relief, courts construe the motion to dismiss as a motion for judgment on the pleadings. *See Rennie v. Hess Oil V.I. Corp.*,

---

[3] The August 29, 2016 Response also clarified that Terence is the correct spelling of Mr. Willie's first name. The Court later ordered the caption amended.

[4] The Court recognizes that some of the parties have settled out of court since the February 16, 2017 Order was entered, but prior to the issuance of this Opinion. Notwithstanding this change, the Court will refer to the posture of the case as it was when the Order issued because that Order explicitly referenced that an opinion would be forthcoming, and because the purpose of an opinion is to allow the court to explain the rationale behind its ruling. *Cf. Brown v. People*, 56 V.I. 695, 702 (2012) ("[W]hen parties properly raise an issue during the course of Superior Court proceedings, the Superior Court possesses an obligation to explain the reasons for its decision." (citations omitted)).

37

62 V.I. 529, 536 (2015) (post-answer motions to dismiss for failure to state a claim generally treated as motions for judgment on the pleading (citing *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 565 (2012)); *see also Goodwin v. Fawkes*, SX-11-CV-435, 2016 V.I. LEXIS 198, at *37 (Super. Ct. Dec. 12, 2016) ("A post-answer motion to dismiss for failure to state a claim must be considered as a motion for judgment on the pleadings, which would be subject to the same legal standard, unless the motion attempts to resurrect a waived or forfeited defense." (quotation marks, brackets, and citations omitted)). The reason why is especially relevant here.

■ If an opposing party cannot prepare an adequate response, because the facts alleged in support of the claim are deficient or too vague, then the party moves for a more definite pleading. *See* SUPER. CT. R. 31 ("Upon application by any party on notice, the court may order the filing and serving of a more certain and definite pleading. Rule 12(e) of the Federal Rules of Civil Procedure shall govern such applications."); *see also* FED. R. CIV. P. 12(e) ("If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleadings. The motion shall point out the defects complained of and the details desired.");[5] *accord In re: Kelvin Manbodh Asbestos Litig. Series*, SX-97-CV-324,

---

[5] Both the Supreme Court and other judges in the Superior Court have expressed concerns regarding the "open-ended" and "revolving-door" way in which the Rules of the Superior Court have been construed, such that any amendment or revision to the federal rules are applied in local cases automatically and uncritically. *See, e.g., Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 576-84 (2015); *Ernest v. Morris*, 64 V.I. 627, 636 n.7 (2016) ("Superior Court rules that incorporate the rules of other courts by reference may conflict with section 21(c) of the Revised Organic Act." (citations omitted); *Davis v. HOVENSA, LLC*, 63 V.I. 475, 482 n.7 (Super. Ct. 2015) (applying Supreme Court precedent that applied federal rule of civil procedure rather than applying the rule directly) (citations omitted). Mindful of such concerns, the Court quotes the version of Federal Rule of Civil Procedure 12(e) in effect in 1993 when the then-Territorial Court continued former Territorial Court (now Superior Court) Rule 31 in force and effect, even though in this instance the changes since then to Rule 12(e) were merely stylistic. *See In re: Order Amend. Rules of Terr. Ct. of the V.I.*, Misc. No. 81A/1994, 1994 V.I. LEXIS 23, at *5-6 (Terr. Ct. Nov. 16, 1994) (Rule 31 not included among the rules adopted, amended, or repealed). *Cf.* FED. R. CIV. P. 12 (2015 rev. ed.) (advisory committee notes to 2007 amendments) ("The language of Rule 12 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.").

2005 V.I. LEXIS 37, at *2 (Super. Ct. Jan. 18, 2005) ("A party may file a motion for a more definite statement when necessary to aid in its preparation of an answer."). Courts may also order claimants "to flesh out the issues" in their pleadings and provide further detail, either *sua sponte* within their inherent authority "to move the case forward efficiently and orderly," or by construing a motion to dismiss as a motion for a more definite pleading. *Henry v. HOVENSA, LLC*, SX-15-CV-568, 2016 V.I. LEXIS 55, at *13 (Super. Ct. May 19, 2016); *accord Mitchell v. Gen. Eng'g Corp.*, SX-07-CV-504, 2017 V.I. LEXIS 32, at *22 (Super. Ct. Feb. 23, 2017) (noting inherent authority to order parties to replead pleadings). However, when a pleading is truly inadequate or insufficient — rather than deficient, *cf.* SUPER. CT. R. 8 (defects and omissions in pleadings cured by amendment) — the opposing party files a motion to dismiss for failure to state a claim for relief. *Cf. Benjamin*, 56 V.I. at 565 (motion to dismiss for failure to state a claim "must be made before the first responsive pleading." (citing *Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 190 (2009)). But if the claim has been answered, the opposing party has said to the court that the facts alleged were not so vague or unclear so as to render filing a response impossible and, further, that the allegations (although denied) could state a claim for relief, if ultimately accepted by the factfinder.

▉ Courts construe a motion to dismiss, brought after the pleading has been answered, as a motion for judgment on the pleadings because the opposing party has already answered and cannot now challenge the sufficiency (or plausibility) of the claim asserted. *Cf. Matthews v. Peters*, 818 F. Supp. 224, 225 (N.D. Ill. 1993) (noting "the important distinction between a . . . motion to dismiss (which attacks only the sufficiency of an existing complaint and therefore *allows the opportunity to cure* any problem with that pleading) and a . . . motion for judgment on the pleadings (which asserts that the complaint is flawed in such a way that it cannot be cured by repleading, so that defendants are *entitled to a final judgment* of dismissal of the action itself)." (emphasis added)). Rather, the question becomes whether the claim asserted has merit. *Cf. Bensalem Township Sch. Dist. v. Pennsylvania*, 518 Pa. 581, 544 A.2d 1318, 1321 (1988) ("[M]otion for judgment on the pleadings can be used as a motion to test whether such a cause of action as pleaded exists at law, and in that way is in the nature of a demurrer. . . . The issue in such a case is not whether the facts support the action, but whether there is such an action

39

under the law." (quotation marks and citation omitted)). But a motion for judgment on the pleadings is not identical to a motion to dismiss for failure to state a claim.

▮ By moving for judgment on the pleadings, the moving party says to the court that the claim itself fails, not because the facts alleged in support are inadequate or deficient, but because the cause of action is not viable. That is, either the claim is not recognized under existing law, e.g., because no one could prevail on such a claim, *cf. Matthew v. Herman*, 56 V.I. 674, 674 (2012) (rejecting amatory tort claims under Virgin Islands law), or an affirmative defense may bar the claim, e.g., the complaint reveals that the statute of limitations has run. While each motion differs in its impact, the standard of review is the same: "a motion for judgment on the pleadings . . . [is] subject to the same legal standard" as a "motion to dismiss for failure to state a claim." *Rennie*, 62 V.I. at 536 (citing *Benjamin*, 56 V.I. at 565).

> A motion for judgment on the pleadings should . . . be granted . . . [when] the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law. As with a . . . motion [to dismiss], th[e Superior] Court views the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff. . . . [However,] the trial court . . . [is] foreclosed from considering evidence from any source outside of the pleadings and the exhibits attached to the pleadings in determining whether . . . to grant a motion for judgment on the pleadings.

*Benjamin*, 56 V.I. at 566 (quotation marks, citations, and brackets omitted); *see also Castillo v. St. Croix Basic Servs.*, SX-09-CV-299, 2016 V.I. LEXIS 4, at *4 (Super. Ct. Jan. 10, 2016) ("[N]o material difference in the applicable legal standards for the motion for judgment on the pleadings and the motion to dismiss for failure to state a claim."). One subtle, but crucial, difference still remains, however, between the two motions. In ruling on a motion for judgment on the pleadings, "all of the opposing party's well-pleaded allegations are viewed as true but *only those facts specifically admitted* by him may be considered against him." *Bata v. Central-Penn Nat'l Bank*, 423 Pa. 373, 224 A.2d 174, 178 (1966) (citations omitted). *Cf. Poole v. Great Am. Ins. Co.*, 407 Pa. 652, 182 A.2d 509, 510 (1962) (" 'A motion for judgment on the pleadings, like preliminary objections, is the equivalent of

40

the old statutory demurrer and admits all facts which are well pleaded.' " (quoting *Ross v. Metropolitan Life Ins. Co.*, 403 Pa. 135, 169 A.2d 74, 74 (1961) (citations omitted)).

In its answer to Litwin's third-party complaint, Shell asserted "contribution, indemnity, and set-off" as a counterclaim. Litwin responded by filing an answer. Thus, Litwin's motion to dismiss, filed ten years later, is really a motion for judgment on the pleadings.[6]

## RELEVANT LAW

Before turning to the merits of Litwin's motion, the Court must first decide what counterclaims Shell asserted, what law governs those claims, and lastly what standard of review applies. *Cf. Joseph v. Bureau of Corr.*, 54 V.I. 644, 654 n.7 (2011) ("[N]ormally a trial court should endeavor to determine what claims are being presented before determining whether they have been barred by a release."); *Der Weer v. Hess Oil V.I. Corp.*, 64 V.I. 107, 135 (Super. Ct. 2016) ("[B]ecause summary judgment is determined according to the substantive law governing the cause of action, courts must first determine what claims are presented and then what law governs those claims." (quotation marks and citations omitted)).

Rule 34 of the Rules of the Superior Court provides that "[a]ll claims in the nature of recoupment, set-off, cross-action, or any other claim for relief, except a complaint or a third-party complaint, shall be asserted in an answer as a counterclaim, and not otherwise, and shall be served and filed within the time limited for answering." Shell complied with Rule 34 by asserting in its answer what it labeled as a "counterclaim" for "contribution, indemnification, and set off" against Litwin. (Ans. & Countercl. 12.) Yet, Shell also asserted its "contribution, indemnity and

---

[6] In its opposition, Shell argues that Litwin's motion "filed . . . over a decade later," as Shell filed its counterclaims in July 2006, should be "dismissed as untimely." (Shell's Opp'n to Litwin's Mot. to Dismiss 2, filed Dec. 14, 2016.) Shell points to Rule 12(a)(1)(B) and notes that Litwin had twenty-one days to " 'serve an answer to a counterclaim.' " *Id.* (quoting FED. R. CIV. P. 12(a)(1)(B)). Assuming Rule 12(a)(1)(B) applies in the Superior Court through Rule 7, *but cf. Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 576 (2015), Shell is mistaken if it believes that Litwin's August 31, 2016 motion was its response to Shell's counterclaim. It was not. Litwin served its answer to Shell's counterclaims on August 8, 2006 and filed it on August 16, 2006. Additionally, neither the undersigned judge, nor any of the prior judges who were assigned to this case, set a deadline for dispositive motions *before* Litwin filed this motion. Shell's claim that Litwin's motion is untimely is rejected.

41

set-off" counterclaim as if it were one claim for relief. That is, it is unclear whether Shell intended to assert three counterclaims — and if so, whether as separate claims or in the alternative to each other — or only one claim, broadly stated under the law governing apportionment of liability. That is, Shell did not counterclaim for breach of contract, for example. Rather, Shell's counterclaim concerns only the potential liability it may have to Litwin, if Litwin were found liable to Mr. Willie. Despite the inartful way in which Shell pleaded its counterclaims, the Court will err on the side of caution and proceed as though Shell did assert three separate counterclaims, particularly since the parties also addressed contribution, indemnification, and set-off separately in their motion papers. Nonetheless, this Court echoes concerns other Superior Court judges have raised about such inartful, "shotgun" pleadings.[7]

## CONTRIBUTION, INDEMNIFICATION, AND SET-OFF

In its motion, Litwin correctly points out that Virgin Islands precedent "has not fleshed out" Superior Court Rule 34 or how "the cause of action for set-off" should be construed or defined. (Litwin's Mot. to Dismiss Countercl. 5, filed Aug. 31, 2016 ("Mot.").) Litwin then asserts, incorrectly, that "[t]he *Superior Court* has adopted the RESTATEMENT (THIRD) OF TORTS — APPORTIONMENT OF LIABILITY Sections 22 and 23 for the law of indemnity and contribution, respectively." *Id.* at 4 (emphasis added) (citing *Jacobs v. Roberts*, ST-14-CV-193, 2015 V.I. LEXIS 58, at *8 (Super. Ct. May 21, 2015), and *In re: Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. 375 (Super. Ct. 2005) ("*Manbodh III*")). Shell failed to respond to Litwin's concerns regarding the law of set-off,

---

[7] "[A] 'shotgun pleading' . . . is defined as 'a complaint that, in each count, incorporates all the preceding paragraphs . . . making it virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.' " *Henry v. HOVENSA, LLC*, SX-15-CV-568, 2016 V.I. LEXIS 55, at *9 (Super. Ct. May 19, 2016) (quoting *Bell v. Radcliffe*, ST-13-CV-392, 2014 V.I. LEXIS 119, at *30 (Super. Ct. April 30, 2014)); *see also Mitchell*, 2017 V.I. LEXIS 32, at *22-23. Although "shotgun pleading" refers most often to complaints, it also encompasses counterclaims, since a counterclaim is also a pleading as it must be asserted in an answer. *See* SUPER. CT. R. 34; *cf. First Union Discount Brokerage Servs. Inc. v. Milos*, 997 F.2d 835, 844 n.15 (11th Cir. 1993) ("The Miloses' amended counterclaim is a classic example of a 'shotgun pleading.' They framed the amended counterclaim in such a way that it is practically impossible to determine which allegations bear true relevance to which counts, and, moreover, precisely what First Union did to give the Miloses any right of action." (internal citation omitted)).

but did rebut Litwin's assertion about the Superior Court's adoption of the restatements. Citing *Government of the Virgin Islands v. Connor*, 60 V.I 597 (2014), Shell correctly notes that "decisions of one Superior Court judge do not bind the . . . other Superior Court judges." (Shell Opp'n to Mot. to Dismiss Countercl. 2, filed Dec. 14, 2016 ("Opp'n").) Such decisions are "merely persuasive."[8] *Id.* Consequently, "Litwin's hard reliance on the RESTATEMENT (THIRD) OF TORTS as governing law is misplaced," Shell argues. *Id.*

■ As the parties' arguments show, before turning to the merits, the Court must first determine whether Virgin Islands common law should recognize contribution, indemnification, and set-off as claims for relief and if so what common law rules should apply.[9] The Supreme Court of the Virgin Islands has not considered yet whether, under Virgin Islands law, contribution, indemnification, or set-off should be recognized. When presented with a question regarding what law applies, and the question

---

[8] Such persuasive precedent may be entitled to a status higher than "merely persuasive," (Opp'n 2), perhaps even "great respect," *Banks*, 55 V.I. at 981 (quotation marks and citation omitted), particularly if attorneys, businesses, and the public have grown to rely on such precedent absent any controlling authority to the contrary. *Cf. Smith*, 65 V.I. at 189 ("For nearly two decades the Family Courts in the Virgin Islands have followed the reasoning of a Territorial Court case which ultimately held that pension benefits are indeed marital personal property, subject to claim by the other spouse upon divorce." (footnote omitted) (citing *Fuentes v. Fuentes*, 38 V.I. 29, 31 (Terr. Ct. 1997)).

[9] Shell's "shotgun-pled" counterclaim also raises another concern, whether contract law or general common law applies. Courts have recognized that indemnification claims can arise from an indemnification agreement and from the common law. *See, e.g., In re: Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. 267, 289 (Super. Ct. 2005) ("A cause of action for contractual indemnification is similar to its common law incarnation, except the former is limited to staying within the realm of rights predefined by a contract. That is, contractual indemnification must arise from an appraisal of contract rights while common law indemnification need not." (internal citation omitted)); *Hawthorne v. S. Bronx Cmty. Corp.*, 78 N.Y.2d 433, 582 N.E.2d 586, 588, 576 N.Y.S.2d 203 (1991) (both contract of indemnity and common-law right to indemnity may "exist independent of the other."). Likewise, courts have also recognized that contribution may arise by contract and under the common law. *See, e.g., N.Y. Hosp. Med. Ctr. of Queens v. Microtech Contracting Corp.*, 22 N.Y.3d 501, 982 N.Y.S.2d 830, 5 N.E.3d 993, 994 (2014) ("[T]he hospital brought this action for common-law and contractual contribution and indemnification against Microtech to recover any damages it incurred in the Labor Law litigation with the Lemas."); *In re: Indiv. 35W Bridge Litig.*, 806 N.W.2d 811, 825 (Minn. 2011) ("The State cross-claimed against Jacobs for common law contribution and indemnity, contractual contribution and indemnity, and statutory reimbursement."). The parties' arguments addressed only the common law. The Court has evaluated Shell's counterclaims accordingly.

has not been settled by controlling precedent, courts applying Virgin Islands law must conduct a *Banks* analysis: "a three prong test . . . [for] determining Virgin Islands common law: '(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands.' " *Smith v. Henley*, 65 V.I. 179, 189-90 (Super. Ct. 2016) (quoting *Banks v. Int'l Rental & Leas. Corp.*, 55 V.I. 967, 979 (2011)). Because controlling precedent has not addressed yet whether Virgin Islands law recognizes a claim for contribution, indemnification, or set-off, the Court must conduct a *Banks* analysis for each. *Accord In re: Refinery Dust Claims* SX-06-CV-076, 2016 V.I. LEXIS 48, at *17 (Super. Ct. May 3, 2016) ("While contribution and indemnification were viable causes of action in the U.S. Virgin Islands pre-*Banks*, to date, there are no binding decisions in the Virgin Islands addressing whether these claims are still viable post-*Banks*. This question — whether contribution and indemnification should continue to be recognized in this jurisdiction — must be addressed.").

### CONTRIBUTION AND INDEMNIFICATION GENERALLY

The disagreement between Shell and Litwin regarding what law applies to common law contribution and common law indemnification claims — and the changes in the law over years in the Virgin Islands well before *Banks* — is best understood if viewed against the broader, historical backdrop. Historically, at common law, contribution was not allowed. "At common law, there was no right of contribution among tortfeasors. The ancient basis . . . is the policy that the law should deny assistance to tortfeasors in adjusting losses among themselves because they are wrongdoers and the law should not aid wrongdoers." *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs*, 38 Cal. 3d 488, 213 Cal. Rptr. 256, 698 P.2d 159, 162 (1985) (quotation marks and citation omitted); *accord Gomes v. Brodhurst*, 394 F.2d 465, 467 (3d Cir. 1967) ("The first question is whether a right of contribution generally exists among joint tortfeasors. That no such right is recognized at common law has long been clear." (citing *Merryweather v. Nixan*, (1799), 101 Eng. Rep. 1337 (K.B.)); *In re: Rural/Metro Corp. Shareholders Litig.*, 102 A.3d 205, 222 (Del. Chancery Ct. 2014) ("At common law, Delaware did not recognize a right of contribution among joint tortfeasors. If multiple tortfeasors could be held jointly and severally liable, a plaintiff could pursue any one

44

of them and recover its full damages. That tortfeasor would have to bear the full loss, and it would not have the ability to seek contribution from the other joint tortfeasors. At the same time, the common law held that a release of any one joint tortfeasor operated to release all other joint tortfeasors. A plaintiff therefore could not settle with one joint tortfeasor for a portion of its damages then seek to recover the balance from other joint tortfeasors." (footnote omitted)); *Marchman & Sons, Inc. v. Nelson*, 251 Ga. 475, 306 S.E.2d 290, 291 (1983) ("An over-simplified account of the history of contribution among joint tortfeasors begins with the premise that at common law contribution was not allowed."); *Kans. Pub. Empls. Retirement Sys. v. Reimer & Koger Assocs.*, 261 Kan. 17, 927 P.2d 466, 481 (1996) ("Contribution between joint tortfeasors in the absence of an express contract was not a remedy which existed at common law. Kansas adheres to the common law rule that there is no right of contribution between joint tort-feasors." (quotation marks and citation omitted)); *see also* R.D. Hursh, Annotation, *Comment Note: Contribution Between Negligent Tortfeasors at Common Law*, 60 A.L.R.2d 1366, 1368 (1958) ("Since 1799 . . . it has been an established principle of the common law that, as between joint tortfeasors, there is no right of contribution. The applicable rule has been said to be '*in pari delicto potior est conditio defendentis*.[10] "). *But see Roberts v. Am. Chain & Cable Co.*, 259 A.2d 43, 50 (Me. 1969) ("[A]t common law joint or concurrent tortfeasors had no right as against each other to secure contribution . . . which was not the case in Maine." (parentheses omitted)); *cf. Fakes v. Price*, 18 Okla. 413, 89 P. 1123, 1124 (1907) ("[*I*]*n pari delicto potior est conditio defendentis* . . . is subject to the exception that persons jointly liable for a wrong may have contribution where there was no wrongful intent, or where the wrong committed was not in itself illegal." (internal citation omitted)).

Because "the vast majority of American jurisdictions adhered to the common-law rule that no contribution could be had among joint tortfeasors," *Lentz v. Freeman Assocs. Caribbean, Inc.*, 441 F. Supp. 892,

---

[10] Translated from Latin to English: "In a case of equal or mutual fault the position of the defending party is the better one." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S. Ct. 2622, 86 L. Ed. 2d 215 (1985) (quotation marks, citation, ellipses, and alterations omitted).

894 (D.V.I. 1977), state and territorial legislatures eventually allowed contribution by statute. *See* 5 V.I.C. § 1451(d); *see also Miller v. Riverwood Recreational Ctr., Inc.,* 215 Mich. App. 561, 546 N.W.2d 684, 686 (1996) ("The right to contribution in Michigan is controlled entirely by statute because there was no right to contribution at common law."); *The Doctors Co. v. Vincent,* 120 Nev. 644, 98 P.3d 681, 686 (2004); ("Contribution is a creature of statute."). In other words, legislation arose in an attempt to remedy the harshness of the rule the courts had created. *Cf. Nw. Airlines v. Transp. Workers Union,* 451 U.S. 77, 86-88, 101 S. Ct. 1571, 67 L. Ed. 2d 750 (1981) ("At common law there was no right to contribution among joint tortfeasors. In most American jurisdictions, however, that rule has been changed *either by statute or by judicial decision.*" (emphasis added) (footnotes omitted)).

Unlike contribution, indemnification was recognized at common law. "The right to indemnity . . . is a common law equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault." *City of Wilkes-Barre v. Kaminski Bros., Inc.,* 804 A.2d 89, 92 (Pa. Commw. Ct. 2002); *see also* RESTATEMENT (SECOND) OF TORTS § 886B cmt. a (1979) ("Unlike the action between joint tortfeasors for contribution, which encountered much difficulty in the common law and has had to be changed in many states by statute, the action for indemnity has always been recognized without dissent." (internal citation omitted)).

> Since at common law joint or concurrent tortfeasors had no right as against each other to secure contribution . . . courts fashioned an analogous rule of obtaining restitution on the theory of indemnity or exoneration in purely tort and non-contractual situations but only under certain exceptional and limited circumstances. They applied the rule in such cases as when one joint tortfeasor was passively negligent while the other was guilty of active negligence, when one's negligence was secondary as compared to the primary negligence of the other, or when, upon contrasting the respective degree of culpability of wrongdoers, one appeared as the principal wrongdoer as against the other whose negligence was less culpable. By judicial fiction a promise or obligation to indemnify was raised as a matter of law in terms of quasi contract on the part of the tortfeasor who was actively or primarily negligent or whose negligence was greater in degree of culpability in

favor of the other tortfeasor who was only passively or secondarily negligent or whose negligence was of lesser magnitude.

*Roberts*, 259 A.2d at 50 (citation omitted).

Indemnification differs in one significant way from contribution: "there is no right to indemnity between joint tortfeasors." 41 AM. JUR. 2D *Indemnity* § 21 (2005). In other words, if a jury were to find two defendants jointly and severally liable for the plaintiff's injuries, then one defendant's claim against the other for common law indemnification would fail because the jury, necessarily, would have found that both defendants had "actively participated in the wrongdoing." *Id.* § 22.

> The principles governing contribution and indemnity are similar both in origin and in character. In modern law these principles comprise the subject that is treated under the general title of restitution. The principles of restitution are derived from the old common-law actions of general assumpsit and those which we now call quasi-contract and from the equitable principles of unjust enrichment. The basis of the right to restitution is the belief that men should restore what comes to them by mistake or at another's expense, and that it is unfair to retain a benefit or advantage which should belong to another. . . . Although both contribution and indemnity rest upon this common concept, they are significantly different . . . .
>
> Contribution is the remedy securing the right of one who has discharged more than his fair share of a common liability or burden to recover from another who is also liable the proportionate share which the other should pay or bear. Contribution rests upon principles of equity. Indemnity is the remedy securing the right of a person to recover reimbursement from another for the discharge of a liability which, as between himself and the other, should have been discharged by the other. Indemnity is generally said to rest upon contract, either express or implied. However, there are numerous exceptions and situations in which a contract is implied by law, and contract, therefore, seems to furnish too narrow a basis. In the modern view, principles of equity furnish a more satisfactory basis for indemnity.
>
> Contribution and indemnity are variant remedies used when required by judicial ideas of fairness to secure restitution. Although similar in nature and origin and having a common basis in equitable principles,

47

they differ in the kind and measure of relief provided. Contribution requires the parties to *share the liability* or burden, whereas indemnity requires one party to *reimburse the other* entirely. Differing thus in their effect, these remedies are properly applicable in different situations. Contribution is appropriate where there is a common liability among the parties, whereas indemnity is appropriate where one party has a primary or greater liability or duty which justly requires him to bear the whole of the burden as between the parties.

*Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 104 N.W.2d 843, 846-47 (1960) (emphasis added) (footnotes omitted), *overruled in part on other grounds, Tolbert v. Gerber Indus., Inc.*, 255 N.W.2d 362, 368 n.11 (Minn. 1977); *accord McLean v. Alexander*, 449 F. Supp. 1251, 1265 (D. Del. 1978) ("The principle of indemnification serves to shift the entire burden from one defendant to another whereas the effect of contribution is to share the burden among the defendants."), *rev'd on other grounds*, 599 F.2d 1190 (3d Cir. 1979).

With this background in mind, the Court begins its analysis of common law contribution and common law indemnification in the Virgin Islands and around the country.

## COMMON LAW CONTRIBUTION

### 1. VIRGIN ISLANDS PRECEDENT

Although contribution did not exist, historically, at common law — thus, asserting a claim for common law contribution is somewhat of a misnomer — contribution was recognized in the Virgin Islands under our common law. In *Gomes*, the United States Court of Appeals for the Third Circuit, sitting as the de facto court of last resort for the Territory, concluded

[a]fter extended consideration ... that there is no compelling reason to defer or deny applying what we deem a rule of reasoned fairness. There is no longer a legitimate place in our system, if, indeed, there ever was, for a rule of law which places the full burden of restitution upon one who is only in part responsible for a plaintiff's loss. Such a philosophy stems from a more ancient day which more easily intermingled penal and compensatory considerations.

48

394 F.2d at 467-68 (footnote omitted). Six years later, in 1973, the Legislature of the Virgin Islands and adopted a statute that provided for contribution among joint tortfeasors. *See* Act No. 3382, 1973 V.I. Sess. L. 9, 9-10 (codified at 5 V.I.C. § 1451(d)). Section 1451 of title 5 provides that

> [w]here recovery is allowed against more than one defendant, the trier of fact shall apportion, in dollars and cents, the amount awarded against each defendant. Liability of defendants to plaintiff shall be joint and several but, for contribution between defendants, each defendant shall be liable for that proportion of the verdict as the trier of fact has apportioned against such defendant . . . .

5 V.I.C. § 1451(d).

In a decision issued shortly thereafter, in 1977, the District Court explained the background to the Virgin Islands comparative negligence statute and its impact on contribution claims under Virgin Islands law. *See Lentz*, 441 F. Supp. 892. Thomas W. Lentz and his minor son, Thomas J., got into a car accident with Leola and William Kopenski on Weymouth Rhymer Highway in St. Thomas. *See* 441 F. Supp. at 894; *see also Freeman Assoc. Caribbean, Inc., v. Gov't of the V.I.*, 19 V.I. 575, 577 (D.V.I. 1983). The Lentzes had sued the Kopenskis and — because the Lentzes also claimed that "the condition of the road on which the accident occurred contributed causally to the accident" — the company who designed the road, Freeman Associates Caribbean, Inc., the person who built the road, Eugene H. Smith, and the owner of the road, the Government of the Virgin Islands. *Lentz*, 441 F. Supp. at 894. At issue in *Lentz* was how to proceed with the Government as a defendant given the statutory cap on the Government's tort liability and the prohibition on jury trials when the Government is a party. *See id.* Ultimately, the court settled on an approach whereby the jury would find the liability of the private parties and the court (in a bench trial) would determine the Government's liability. *See generally id.* at 896. The court also placed its decision in context of the Legislature's adoption of section 1451:

> Prior to the passage of contribution statutes, the vast majority of American jurisdictions adhered to the common-law rule that no contribution could be had among joint tortfeasors. Plaintiff was entitled to recover in full against any of the jointly liable defendants, and upon execution by plaintiff, the discharging tortfeasor had no recourse

whatsoever against the remaining defendants for contribution regardless of their degree of fault. The obvious inequities of such a result, particularly in situations where two or more defendants were unintentionally responsible for plaintiff's injuries, led to the passage of statutes authorizing various modes of contribution among joint tortfeasors, or to the recognition of a right to contribution, without a statute, in the majority of American jurisdictions. The Virgin Islands legislature, on February 15, 1973, enacted such a statute, providing that contribution among joint tortfeasors be effected per findings by the trier of fact of the proportionate liability of each of several defendants found jointly liable to a plaintiff.

Where contribution is based upon findings of comparative fault, as in this jurisdiction, or on a pro-rata formula pertaining solely to the total judgment award and the number of defendants liable thereon, plaintiff's right to proceed against any one of the defendants for satisfaction in full has remained undisturbed. Indeed, the local statute specifically provides that comparative fault determinations do not affect the joint and several liability of each defendant to plaintiff, for the entire judgment amount. Accordingly, where one of several defendants found jointly liable to plaintiff is insolvent, or otherwise without sufficient funds to remit the entire judgment amount or its adjudged share of monetary liability, plaintiff may nonetheless execute against any of the remaining defendants for the entire judgment. The inability of any one of several defendants to contribute to the satisfaction of a judgment is of no consequence from the purview of plaintiff, for as long as one defendant is capable of effecting satisfaction in full, plaintiff may so recover. Each defendant is as responsible to plaintiff for the whole of his injury as if it were the sole causal factor. *The relative degrees of fault of the defendants*, as well as their relative financial capabilities, *become germane solely within the ambit of actions for contribution*.

*Lentz*, 441 F. Supp. at 894-95 (emphasis added) (citations omitted).

The next case after *Lentz* to consider contribution claims was *Dublin v. Virgin Islands Telephone Corporation*, 15 V.I. 214 (Terr. Ct. 1978). Gloster Dublin had sued the Virgin Islands Telephone Corporation after telephone lines fell on his house and damaged it. *See id.* at 218. The phone company moved for leave to file a third-party complaint against a bus

50

company and the Virgin Islands Government, "alleging in effect that it is entitled to indemnification for any judgment that plaintiff may recover against it." *Id.* A significant portion of the court's opinion in *Dublin* concerned whether a claim for indemnification or contribution[11] sounds in contract or in tort, and if in tort, whether the phone company had complied with the Virgin Islands Tort Claims Act. *See generally id.* at 220-24, & 228-39. But *Dublin* also considered when a claim for common law indemnification and contribution can be raised.[12] *Cf. id.* at 225 ("A defendant's right to assert a claim for contribution or indemnity against a joint tortfeasor by way of a third-party action *depends . . .* upon his right to assert such a claim *in an independent action. . . .* Therefore, the court must turn to the substantive law of the Virgin Islands to determine the source of Vitelco's third-party claims." (emphasis added) (citations omitted)). Turning to Virgin Islands substantive law, *Dublin* acknowledged first, that *Gomes* had created a right to contribution under Virgin Islands law. *See id.* at 224. Citing the RESTATEMENT (FIRST) OF RESTITUTION as well as a 1972 tentative draft of section 886B of the Restatement (Second) of Torts, the court further held "that a right to contribution or indemnity against a joint tortfeasor exists in the Virgin Islands." *Id.* at 227. Although only marginally relevant here, *Dublin* also held — and, in so doing, rejected the majority view — that contribution and common law indemnification claims do not "sound[ ] in implied contract. Such a holding would be illogical," the court concluded, "and justifiable only on ill-founded historical notions." *Id.* at 230 (footnote omitted). Instead, *Dublin* held that, "[w]here the conduct giving rise to both the plaintiff's claim for damages and defendant's claim for

---

[11] The court also considered, *sua sponte*, that VITELCO may have been seeking contribution as an alternative to indemnification. *Dublin*, 15 V.I. at 218 n.2 ("Although the third-party complaint prays solely for indemnification from the third-party defendants, the court construes the defendant's claim as also including a prayer for contribution. This is done because of the importance of the issues that will be considered and because indemnity and contribution claims present similar considerations in the context of the pending motion. Moreover, such an approach is particularly useful in light of the mandate . . . that parties shall be granted the relief to which they are entitled, irrespective of whether it has been prayed for in the complaint." (internal citations omitted)).

[12] Although the issue in *Dublin* was whether the Government could be sued for indemnification or contribution as a third-party defendant, the analysis in *Dublin* regarding contribution would extend to private persons as well since "the Government, pursuant to 33 V.I.C. § 3408, has consented to have its liability determined as 'if a private person.' " *Dublin*, 15 V.I. at 227 (footnote omitted).

contribution or indemnity . . . is tortious, and is founded on a third-party's breach of a duty of due care . . . the defendant's claim for contribution or indemnity, no less than the plaintiff's, sounds in tort." *Id.* at 231 (footnote omitted).

Contribution was at issue again a year later in *Brooks v. Jackson*, Civ. No. 87-1978, 1979 U.S. Dist. LEXIS 15407 (D.V.I. Mar. 23, 1979). Madiana Jackson and Yvette Brooks got into a car accident with Eleanora Shillingford. *See id.* at *1. Jackson and Brooks were in the same car. Jackson owned the car and was driving it at the time of the accident. Brooks sued Jackson and the driver of the other car, Shillingford, for damages. In her answer, Jackson asserted a cross-claim against Shillingford for contribution. Shillingford moved to dismiss, arguing "that the basis of the cross-claim is superseded by the terms of the Virgin Islands comparative negligence statute, 5 V.I.C. § 1451(d)." *Id.* In ruling on the motion, the court concluded that

> contribution among joint tortfeasors is to be determined by the trier of fact. Thus, cross-claims for contribution based on a tort theory, unlike cross-claims based on contractual indemnity, are superfluous. . . .
>
> . . . [T]he better practice would be not to allow a cross-claim for contribution where comparison of negligence on the theory of joint liability will be submitted to a fact-finder. The presence of the cross-claim serves only to confuse the jury and is likely to be prejudicial to the two battling defendants. Instead, the preferable procedure is for the Court to order contribution on motion by one co-defendant after joint liability to the plaintiff is determined on the merits. In this manner, the presentation of the case is simplified and the interests of co-defendants are protected. In effect, since the judgment on contribution is included in the final judgment of the Court, there is no need for a separate suit for contribution . . . .

*Id.* at *1-2 (quotation marks and citations omitted). The court construed Shillingford's motion to dismiss as a motion to strike "redundant matter" from Brooks's answer and granted it. *Id.* at *3.

Because *Brooks* had caused an "increasing incidence of stomach tissue disintegration among attorneys," the court later modified its holding in *Martin v. Frett*, 17 V.I. 474, 482 (D.V.I. 1980). Like *Brooks*, *Martin* involved a car accident, but between multiple people. Glenis, Kathleen,

52

and Reginald Martin and Venetta Frazer (presumably in the same vehicle) and Eric A. Frett in another vehicle collided with Pedro Hosking, driving a truck for his employer, Carib Gas Corporation. *Id.* at 477. The Martins and Ms. Frazer sued Frett, Hosking, and Carib Gas Corporation and Hosking and Carib Gas cross-claimed against Frett for contribution or indemnification. *Id.* Frett moved to dismiss. *Id.* In opposing Frett's motion, "Hosking and Carib concede[d] the motion as to their contribution claim but insist[ed] that their indemnification claim exists independently of their claim for contribution and . . . [was] not preempted by the comparative negligence doctrine." *Id.* at 481.

Ruling on the motion, the court concluded "that the distinctions between noncontractual indemnification and contribution are irrelevant to the issue of their continued vitality under comparative negligence," *id.*, and found that both indemnification and contribution should be treated alike. *See id.* ("The identical reasoning applies to cross-claims for indemnification not premised on contracts since they also merge into comparative negligence. In fact, RESTATEMENT (SECOND) OF TORTS §§ 886(A), cmt. 1, 886(B), cmt. 1 (1979) predicts exactly that result." (internal citations omitted)). The court acknowledged that Hosking and Carib Gas were correct, "that indemnity and contribution are mutually inconsistent in the sense that indemnity shifts the entire loss from one tortfeasor to another while contribution only shifts a proportionate share." *Id.* at 481-82 (citation omitted). But the court rejected the distinction, finding that it did

> not alter the basic fact that both theories are methods of allocating fault which can be subsumed within the comparative negligence doctrine. In effect, an added claim for indemnification is redundant since a jury operating under comparative negligence can as easily allocate fault between two alleged tortfeasors 100% and 0% as it can 50% apiece.

*Id.* at 482. *Martin* then modified

> the holding of *Brooks v. Jackson* because of the concerns the decision has raised among attorneys. . . . [T]o achieve the twin goals of avoiding confusion to juries and prejudice to cross-claiming defendants from the appearance of fighting between themselves, we concluded that cross-claims for contribution should be striken [sic]. We reasoned that the jury's function of allocating fault could be fulfilled within the more

53

simplified auspices of the comparative negligence doctrine. We envisioned that after a judgment was entered, whatever claims for contribution might arise could then be filed by defense counsel.

Unfortunately, this decision has generated confusion among attorneys because of fear that they might subsequently forget to follow up on their motions for contribution. Moreover, the result in *Brooks* bothered attorneys for the cross-claims were stricken not because they were invalid, but solely for the sake of convenience. The Court now perceives an available method which will accomplish its original goals . . . . Accordingly, from this point onward cross-claims for contribution and, as established by the case at bar, cross-claims for non-contractual indemnity will not be stricken. Instead, the goals of avoiding confusion of jurors and prejudice to cross-claiming defendants will be achieved by prohibiting reference to cross-claims for contribution or non-contractual indemnification during argument, testimony or jury instructions. This solution should satisfy all concerned.

*Id.* After *Martin* came *Beloit Power Systems, Inc. v. Hess Oil Virgin Islands Corporation*, 18 V.I. 317 (D.V.I. 1981) ("*Beloit I*") and *Beloit Power Sys., Inc. v. Hess Oil V.I. Corp.*, 19 V.I. 519 (D.V.I. 1983) ("*Beloit II*"), *rev'd in part*, 757 F.2d 1427 (3d Cir. 1985), and *aff'd in part*, 757 F.2d 1431 (3d Cir. 1985).

The *Beloit* cases concerned "which party must either ultimately bear the entire burden of paying a sizeable civil judgment entered against the plaintiff in . . . *Norwilton Murray v. Beloit Power Systems, Inc.* . . . or at least of sharing the load with plaintiff Beloit Power Systems, Inc." *Beloit II*, 19 V.I. at 521-22. Beloit supplied equipment to HOVIC for use at the oil refinery on St. Croix; HOVIC contracted with Litwin to install the equipment. *Id.* at 522. Mr. Murray worked for Litwin. *Id.* While installing Beloit's equipment, Mr. Murray was seriously injured; he later sued Beloit for damages, alleging both strict liability and negligence. *Id.* The jury found for Mr. Murray and against Beloit on both counts, but apportioned Murray's own negligence at five percent. *Id.*; *see also Murray v. Beloit Power Sys., Inc.*, 79 F.R.D. 590, 591 (D.V.I. 1978), *aff'd sub nom, Murray v. Fairbanks Morse*, 610 F.2d 149, 16 V.I. 647 (3d Cir. 1979). "Mr. Murray recovered a judgment of $1,937,500.00 from Beloit." 18 V.I. at 318. Once the verdict was affirmed on appeal, Beloit's insurance company paid the judgment and then filed a separate action (with Beloit)

54

against HOVIC for contractual indemnity . . . or in the alternative, for common law contribution." *Beloit II*, 19 V.I. at 522.

At issue in *Beloit I* was a motion HOVIC filed for judgment on the pleadings. *See* 18 V.I. at 318. HOVIC argued that a defendant in a prior action could not file a new action for contribution against a nonparty because "the law of the Virgin Islands only allows for contribution between joint tortfeasors where they are both defendants in the same action." *Id.* The Virgin Islands comparative negligence statute had modified the common law ban on contribution between tortfeasors; so HOVIC argued the statute had to "be strictly construed; and strictly construed, it only provides for contribution among defendants." *Id.* at 319. HOVIC took the position that Beloit could not file an action for contribution because Beloit should have impleaded HOVIC into the *Murray* action. *See id.* The question was what the Legislature intended, following *Gomes*, by adopting section 1451 of title 5, in particular subsection (d).

The court noted that "*Gomes* does not specifically address the issue of contribution among non-defendants: the parties in that case were fellow defendants." *Id.* at 320. So the question became, "whether the use of the word 'defendant' in § 1451(d) limits contribution to fellow defendants." *Id. Beloit I* found that it did not. Rejecting HOVIC's strict construction argument, the court found that "the proposition that statutes in derogation of the common law should be construed strictly does not . . . apply here, since [section] 1451 is a codification of the judicially created comparative negligence scheme of *Gomes* . . . . [Section] 1451 ratifies the judicial rule which *Gomes* fashioned." *Id.* at 321; *see also id.* at 320 ("5 V.I.C. § 1451 is the codification of that comparative negligence system." (citing *Verge v. Ford Motor Co.*, 581 F.2d 384, 16 V.I. 41, 52 n.7 (3d Cir. 1978)).

> Rather than encompassing the field of contribution, this statute on its face speaks of a particular situation and the form of apportionment appropriate to that situation. This Court does not interpret this statute as exclusionary regarding contribution. That is, by mentioning one form of contribution § 1451(d) does not thereby exclude all other forms. If that were the aim of the legislature, it could have made itself clear.

*Beloit I*, 18 V.I. at 324. The court further reasoned that

[a] tortfeasor who is not joined in a suit still may have an incentive to settle with a plaintiff if he knows that he may later be found liable in a second suit. The possibility of collusion is minimized if a defendant is not put to the choice of either impleading a tortfeasor in the original suit or losing any chance at contribution. A defendant is vulnerable to being "whipsawed" when he impleads another party; plaintiff and third party defendant could combine in pointing the finger at defendant. The opportunity to bring a second action for contribution allows defendant to make the tactical decision whether or not the advantages to a unified trial will be outweighed by possibilities of collusion. Finally, the equitable consideration of spreading loss according to fault encourages the broadest possible contribution procedure.

. . . The goal of § 1451 generally is to modify the harsh consequences of common law rules. It would be anomalous to acknowledge the liberalizing substantive thrust of this statute and simultaneously interpret it restrictively from a procedural viewpoint.

*Id.* at 325-26 (citation omitted). Finding no bar to separate actions for contribution, *Beloit I* denied HOVIC's motion for judgment on the pleadings. *Id.* at 327.

Undeterred, HOVIC took another approach in *Beloit II*, moving for summary judgment based on the affirmative defense that Beloit had been "collaterally estopped from retrying the issues of negligence and fault which were decided in Murray's original suit against Beloit." 19 V.I. at 530. Although the Honorable Raymond L. Finch, a judge on the Territorial Court at the time sitting by designation in the District Court, had extensively discussed Virgin Islands contribution law in *Beloit I*, the Honorable Almeric L. Christian, then Chief Judge of the District Court, turned instead to "Section 886A of the RESTATEMENT (SECOND) OF TORTS . . . [for] the rule of contribution among tortfeasors in the Virgin Islands." *Beloit II*, 19 V.I. at 530 (footnote omitted) (citing 1 V.I.C. § 4). Relying on a comment to Section 886A, which recognized that contribution could be pursued in a separate action, the court rejected HOVIC's defense:

At no time was the issue of whether negligence on the part of HOVIC contributed to Norwilton Murray's injuries raised. The question before the jury was who, *as between Norwilton Murray and Beloit*, was

> responsible for Murray's injuries. HOVIC's negligence could have
> been before the jury had Beloit impleaded HOVIC under Rule 14 of
> the Federal Rules of Civil Procedure. However, Rule 14 is not
> mandatory.

*Id.* at 531. The court denied HOVIC's motion, concluding that Beloit's contribution claim against HOVIC not be resolved on summary judgment. *Id.*

After *Beloit* came *Manbodh*. *See generally In re: Kelvin Manbodh Asbestos Litig. Series*, Master Case No. 324/1997, 2002 V.I. LEXIS 40 (Terr. Ct. Oct. 4, 2002) ("*Manbodh I*"); *In re: Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. 267 (Super. Ct. 2005) ("*Manbodh II*"); *In re: Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. 375 (Super. Ct. 2006) ("*Manbodh III*"); *In re: Kelvin Manbodh Asbestos Litig. Series*, SX-97-CV-324, 2006 V.I. LEXIS 36 (Super. Ct. Aug. 31, 2006) ("*Manbodh IV*"). *In re: Kelvin Manbodh Asbestos Litigation Series* is the name the Territorial Court gave to a master case it created in 1998 to govern Kelvin Manbodh and approximately 200 other plaintiffs' asbestos lawsuits filed between 1997 and 2001 by men (accompanied in many instances by their wives) who worked at the oil refinery on St. Croix. All, or nearly all, of the plaintiffs sued "HOVIC, Litwin, and some twenty-six other defendants." 47 V.I. at 380. Litwin and HOVIC later sought and were granted leave to file third-party complaints.[13] *Id.*

At issue in *Manbodh I* was a motion filed by third-party defendants Fluor Daniel, Fluor Engineers & Constructors, Inc., and Fluor Corporation (collectively "Fluor," *see* 2002 V.I. LEXIS 40, at *1), to dismiss HOVIC's third-party complaint for failure to state a claim, or to sever the third-party claims. *See id.* HOVIC asserted five claims in its third-party complaint, including common law contribution. In denying Fluor's motion to dismiss, the court in *Manbodh I* concluded that "[c]ommon law contribution is a claim upon which HOVIC may seek relief." 2002 V.I. LEXIS 40, at *5. However, *Manbodh I* did not cite *Gomes, Lentz, Dublin, Brooks, Martin*, or *Beloit* — or even section 886A

---

[13] "HOVIC's third-party claims and cross-claims and Litwin's third-party claims were severed from the first-party matters in October 2002. After claims between HOVIC, Litwin and First-Party Plaintiffs were settled in January 2003, subsequent motions to amend by HOVIC and Litwin, impleading previously named and additional defendants in all remaining first-party cases, were granted in October 2004. In all, some eighty-seven additional companies... were brought into this litigation as third-party defendants." 47 V.I. at 379.

of the Restatement (Second) of Torts — in support. Rather, the court in *Manbodh I* relied on *In re: Reading Company*, 115 F.3d 1111 (3d Cir. 1997) and language the Third Circuit quoted from the Uniform Contribution Among Tortfeasors Act promulgated by the National Conference of Commissioners on Uniform State Laws. *See* 2002 V.I. LEXIS 40, at *4.

Another motion to dismiss was at issue in *Manbodh II* three years later. Rubber & Gasket Company of Puerto Rico, a third-party defendant, moved to dismiss HOVIC's third-party complaint, *inter alia*, for lack of personal jurisdiction. 47 V.I. at 276. Finding personal jurisdiction over Rubber & Gasket, *Manbodh II* observed that "[a] cause of action for common law contribution generally may lie where two or more persons become liable in tort for the same injury to person or property, even though judgment has not been recovered against all or any of them. The factual predicate for contribution is the existence of tort liability in Plaintiffs' assorted negligence and strict liability claims." *Id.* at 280 (citing *Gomes*, 394 F.2d at 466-68; *Beloit I*, 18 V.I. at 324, and 5 V.I.C. § 1451(d)).

HOVIC's common law contribution claims — as well as the same claims by Litwin as a third-party plaintiff — were at issue again in *Manbodh III*, 47 V.I. at 377-78. Because of the number of motions that had been filed by the third-party defendants, and joined by other third-party defendants, the court in *Manbodh III* converted "all motions to dismiss to motions for summary judgment" and proceeded to then decide what law governed before giving "all parties to these motions reasonable time to present all material made relevant by th[e] opinion." *Id.* at 378-79. The issue squarely addressed in *Manbodh III* was what law applied.

> At the heart of the parties' dispute is the identification of the governing law for common law contribution and indemnification. Relying on their interpretation of title 1, section 4 of the Virgin Islands Code, TPDs [or third-party defendants] argue that the RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY, the most recent Restatement approved by the American Law Institute, governs both common law indemnification and contribution. HOVIC and Litwin counter that the Restatements do not apply to common law contribution, because there is local law to the contrary, namely, *Gomes* . . . and section 1451(d) of title 5 of the Virgin Islands Code, as interpreted by *Beloit I*

. . . . Additionally, HOVIC and Litwin argue that the adoption of the provisions of the RESTATEMENT (SECOND) OF TORTS by *Dublin* . . . precludes the application of the RESTATEMENT (THIRD): APPORTIONMENT OF LIABILITY to common law indemnification actions. According to HOVIC and Litwin, continued reliance on *Dublin* is justified because the RESTATEMENT (SECOND) constitutes the prevailing common law of the United States. Since the Motions for Summary Judgment hinge on whether HOVIC and Litwin need to establish the discharge of the TPDs' liability, this section shall identify the applicable substantive law.

*Id.* at 384-85 (footnote and citations omitted).

As to HOVIC and Litwin's contribution claims, *Manbodh III* observed that

[i]n the years since *Gomes*, neither the Third Circuit Court of Appeals nor the Appellate Division [of the District Court of the Virgin Islands] has specifically endorsed either the RESTATEMENT (SECOND) OF TORTS . . . or the RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY . . . . Several District Court and Territorial Court opinions, however, cite approvingly to the RESTATEMENT (SECOND) OF TORTS provisions. While these decisions are neither binding nor dispositive . . . the analysis in *Beloit I* of section 1451(d), as it relates to contribution, is particularly instructive.

*Id.* at 386-87 (footnote omitted). *Manbodh III* agreed with *Beloit I* that it would be " 'anomalous' " to allow contribution under Virgin Islands law between defendants in the same action, but prohibit it in a subsequent action. *Id.* at 387 (quoting *Beloit I*, 18 V.I. at 326). However, at issue in *Manbodh III* was the requirement of a discharge, a new element added to contribution by the third restatement. *See id.* at 388. The third-party defendants argued that HOVIC and Litwin could prevail only if they could prove — in addition to showing that the third-party defendants shared some of the blame for the plaintiffs' injuries — that HOVIC and Litwin had discharged the third-party defendants' liability when they settled with the plaintiffs. The court disagreed. *See id.* at 388.

"The requirement of a discharge, central to the instant motions, was not at issue in either *Gomes* or *Beloit I*," the court explained. *Id.* at 389. Moreover, courts applying Virgin Islands law did not have to apply the

more recent restatement, *Manbodh III* concluded, simply because it was the newest. *See id.* at 388. Rather, "these Restatements *may serve* as the possible sources of substantive law." *Id.* (emphasis added). Since the "substantive elements of contribution" were not discussed in *Gomes* or *Beloit I*, and are "beyond the core area of section 1451," *Manbodh III* thought it best to "look to the policy and principles supporting this statute and resolve this dispute in a manner that 'produces the best total set of rules.' " *Id.* at 390 (quoting *Beloit I*, 18 V.I. at 322)).

The court in *Manbodh III* then proceed to conduct "[a] searching inquiry . . . because the RESTATEMENTS (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY sections 1 through 26, the RESTATEMENT (SECOND) OF TORTS sections 876 through 886B, and the RESTATEMENT (FIRST) OF RESTITUTION sections 76 through 102 offer different approaches to the apportionment of liability." *Id.* at 392. The court rejected the restitution restatement because "its prohibition of contribution among joint tortfeasors . . . no longer represents the majority rule" and because the portions that "continue to be generally accepted and sound" had been adopted by the second and third restatements of torts. *Id.* (citations omitted).

> A brief comparison of the two versions of the RESTATEMENT OF TORTS is critical for deciding which one more accurately summarizes the current majority rule. With contribution, the RESTATEMENT (SECOND) OF TORTS indicates that a plaintiff seeking contribution must establish both its own and the defendant's liability to the injured party. The RESTATEMENT (SECOND) OF TORTS also primarily advocates, as the previous majority rule, the division of contribution along pro-rata lines. Finally, under this Restatement the partial settlement of an injured party's claim by a plaintiff will not provide grounds for contribution against a defendant, even if the plaintiff has settled for more than plaintiff's respective share.
>
> The RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY takes opposite positions with respect to these matters. A settling plaintiff does not need to prove that it would have been liable to the injured party to assert a claim for contribution. In addition, in recognition of the predominant change to comparative fault, the division of tort liability under the RESTATEMENT (THIRD) OF TORTS is now achieved through comparative fault percentages, the current majority

position. This approach is consistent with section 1451 of title 5 of the Virgin Islands Code. Contribution causes of action under the RESTATE-MENT (THIRD) OF TORTS are also not limited to claims that discharge the entire liability; such an action may arise for any amount a plaintiff pays above its percentage share. Finally, in an area unsettled as of the promulgation of the RESTATEMENT (SECOND) OF TORTS, under the RE-STATEMENT (THIRD) a tortfeasor that settles before final judgment is not liable for contribution. This premise, found in the RESTATEMENT (THIRD), is consistent with the reasoning contained in *Gomes*.

*Id.* at 392-93 (citations omitted). *Manbodh III* concluded that the "Restatement (Third) represents the current majority substantive law" and therefore should apply in the Virgin Islands pursuant to section 4 of title 1 of the Virgin Islands Code. *Id.* at 394.

Finally, *Manbodh IV* concerned a motion HOVIC filed as third-party plaintiff for additional time to effect service on a third-party defendant, Viacom, Inc. 2006 V.I. LEXIS 36, at *1-2. Viacom had moved to dismiss for failure to timely serve. At issue was which statute of limitations applied: six years for contracts or two years for torts. *Cf.* 5 V.I.C. § 31. *Manbodh IV* held, contrary to *Dublin*, that, for purposes of the statutes of limitation, "[c]ommon law contribution and indemnification are considered *implied contract* causes of action, that accrued at the time . . . [of] settlement." 2006 V.I. LEXIS 36, at *9 (emphasis added).

After the *Manbodh* decisions, the few courts that questioned what law governed common law contribution claims largely followed *Manbodh III*. *See, e.g., Am. Int'l Ins. Co. of P.R. v. Lampe GMBH*, 307 Fed. Appx. 645, 648-50 (3d Cir. 2009) (citing *Manbodh*, 47 V.I. 375 and applying sections 22-24 of the RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY); *Remy v. Kmart Corp.*, Civ. No. 2005-072, 2008 U.S. Dist. LEXIS 57585, at *2 (D.V.I. July 29, 2008) ("In this jurisdiction, an action for contribution may not be maintained against a tortfeasor who has settled with the plaintiff. Nor can an action for common law indemnification be maintained where both parties are actively negligent." (citing *Gomes*, 394 F.2d at 468, and *Manbodh*, 47 V.I. at 393-94)); *Jacobs*, 2015 V.I. LEXIS 58, at *3 ("The Court finds that the RESTATEMENT (THIRD) OF TORTS-APPORTIONMENT OF LIABILITY Sections 22 and 23 are an expression of the common law of this jurisdiction and finds it proper to adopt and apply Sections 22 and 23 here."). *But cf. Prentice v. Sunny*

*Isles Developers, LLC*, SX-10-CV-122, 2015 V.I. LEXIS 98, at \*6 (Super. Ct. Aug. 18, 2015) ("Metro Door relies heavily on . . . *Manbodh [III]* . . . and the Restatement (Third) of Torts . . . as the substantive law for contribution and indemnification. However, in light of *Connor*, the Superior Court is charged with shaping the law of the Virgin Islands and can no longer mechanistically apply the Restatements."). *Jacobs* acknowledged another case, *Robbins v. Port of Sale, Inc.*, 62 V.I. 151 (Super. Ct. 2015), in addition to *Manbodh*, but *Robbins* only addresses the statute of limitations for contribution and indemnification. *Jacobs* also questioned whether "an additional *Banks* analysis is necessary" in light of *Manbodh* and *Robbins*, and then "conducted a limited *Banks* analysis," but only as to "Sections 22 and 23" of the RESTATEMENT (THIRD). 2015 V.I. LEXIS 58, at \*4. Like *Manbodh III*, *Jacobs* concluded that Section 22 represents current Virgin Islands precedent.

This decisional law of the Virgin Islands, having adopted, construed and reevaluated contribution over the years is a significant factor in deciding whether to continue recognizing contribution as a claim.

### 2. POSITION TAKEN BY OTHER JURISDICTIONS ON COMMON LAW CONTRIBUTION

As discussed above, courts by and large rejected contribution claims between multiple tortfeasors at common law. But not all courts. In addition to the Virgin Islands, courts in the District of Columbia, Illinois, Iowa, Louisiana, Maine, Minnesota, Nebraska, Pennsylvania, Tennessee, and Wisconsin recognized contribution by common law. *See Nw. Airlines*, 451 U.S. at 87 n.17 (collecting cases); *accord Koenigs v. Travis*, 246 Minn. 466, 75 N.W.2d 478, 484 (1956) ("In this state contribution has been extended to joint tortfeasors by the common law and this extension has since invariably been attended by common-law liability restrictions." (citations omitted)); *Estate of Powell ex rel. Powell v. Montange*, 277 Neb. 846, 765 N.W.2d 496, 501 (2009) ("Nebraska has no legislation governing contribution among joint tort-feasors. A number of states have adopted a form of legislation regulating contribution. Some states have adopted the Uniform Contribution Among Tortfeasors Act (UCATA) or a variation of it.").

However, by the end of the last century, the majority of state legislatures had recognized contribution by statute. *See id.* (citing jurisdictions that adopted the Uniform Contribution Among Tortfeasors

Act)); *see also Nw. Airlines*, 451 U.S. at 87 n.17 (collecting state statutes). Predictably, then, the approaches taken around the country vary. *Cf. In re: Rural/Metro Corp.*, 102 A.3d at 233 ("Because [Delaware's UCATA] DUCATA is based on a uniform act, it is natural to ask how other states have approached the question of contribution for intentional torts. Unfortunately, other states have reached diverse results that make it difficult to draw helpful lessons.").

As of 2000, when the Restatement (Third) of Torts was approved, seven jurisdictions had adopted the original Uniform Contribution Among Tortfeasors Act proposed in 1939: Arkansas, Delaware, Hawai'i, Maryland, New Mexico, Pennsylvania, Rhode Island, and South Dakota. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 23 rptr note cmt. a (2000). Twelve jurisdictions adopted the 1955 revised Uniform Contribution Among Tortfeasors Act: Arizona, Colorado, Florida, Guam, Massachusetts, Nevada, North Carolina, North Dakota, Ohio, Oklahoma, South Carolina, and Tennessee. *See id.*; *see also Newby v. Gov't*, 2010 Guam 4, at *21 (2010) (citing the Contribution Among Joint Tortfeasors Act, 7 Guam Code Ann. § 24601 *et seq.*)). Iowa and Washington adopted the Uniform Comparative Fault Act. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 23 rptr note cmt. a. Nine states appear to have enacted their own statutes, not a model or uniform act: Connecticut, Idaho, Illinois, Michigan, Mississippi, Montana, New Hampshire, New Jersey, and Oregon. *See id.* A further six recognize contribution by statute, but limit it to judgment debtors: California, Kansas, Minnesota, Missouri, Texas, and West Virginia. *See id.* Georgia, Kentucky, Louisiana, New York, Virginia, and Wisconsin "have broad contribution statutes that provide for a general right to contribution and leave the details to the courts." *Id.* Only Maine and Nebraska, and possibly Puerto Rico, recognize contribution by common law. *See id.*; *Estate of Dresser v. Me. Med. Ctr.*, 2008 ME 183, 960 A.2d 1205, 1207 (2008) ("In Maine, contribution is an equitable right. . . . Contribution claims are allowed to ensure fairness between joint tortfeasors whose negligence caused a third party harm." (citations omitted)); *cf. Lopez de Robinson v. United States*, 162 F.R.D. 256, 259 (D.P.R. 1995) ("Pursuant to Puerto Rico law, two or more individuals whose combined negligence causes plaintiff's injuries can be held jointly and severally liable as joint tortfeasors for plaintiff's damages. If judgment is entered for plaintiff to have and recover from defendants,

63

jointly and severally, plaintiff may recover the full amount from one of the joint tortfeasors in execution of the judgment. Then, the paying tortfeasor has a right of contribution against the other joint tortfeasor, to recover a portion of the judgment." (citing *Sánchez Rodríguez v. López Jiménez*, 18 P.R. Offic. Trans. 808, 118 D.P.R. 701 (1987); *García Molina v. Gobierno de la Capital*, 72 P.R.R. 133, 72 D.P.R. 138 (1951)). Only Vermont appears to still adhere to the common law rule, unmodified by statute. *See Bradford Oil Co. v. Stonington Ins. Co.*, 190 Vt. 330, 54 A.3d 983, 990 (2011) ("[O]ur common law does not recognize a right of contribution between tortfeasors who are jointly and severally liable." (*citing Swett v. Haig's, Inc.*, 164 Vt. 1, 663 A.2d 930, 931 (1995)). The Supreme Court of the Commonwealth of the Northern Mariana Islands has not yet addressed contribution. *See Boeing Co. v. Leo A. Daly Co.*, Civ. No. 13-027, 2014 U.S. Dist. LEXIS 94736, at *10 (D. N. Mar. I. July 10, 2014) ("The CNMI Supreme Court has yet to outline the elements of equitable indemnification and contribution claims under CNMI law.").

Ordinarily, a *Banks* analysis is limited to decisions construing and applying common law, not statutory law. *See Malloy v. Reyes*, 61 V.I. 163, 177 (2014); *accord Slack v. Slack*, 62 V.I. 366, 375 (Super. Ct. 2015) ("[O]ur search is limited to jurisdictions that have yet to adopt state statutes." (citation omitted)). So, recent decisions from courts in jurisdictions that have adopted a statute to govern contribution would have no weight here. However, because nearly all courts barred contribution at common law, and because legislatures sought to remedy that rule by statute, a discussion of contribution would be inadequate if limited only to those jurisdictions that recognize contribution by common law, particularly since the Virgin Islands also has a statute providing for contribution and none of the cases that construed it held that contribution was limited by section 1451 of title 5 of the Virgin Islands Code. Thus, for completeness' sake, the Court will refer to a few decisions from other jurisdictions to give a broader background.

Alaska, for example, initially rejected common law (or equitable) indemnity in favor of contribution, so long as the person claiming contribution had paid more than its "pro rata" share. *Ogle v. Craig Taylor Equip. Co.*, 761 P.2d 722, 725-26 (Alaska 1988) ("First, the claimant must be a tortfeasor. Second, the contribution defendant must be a tortfeasor. Third, they must be jointly and severally liable in tort for the same injury. Fourth, the claimant must have paid more than its pro rata share of the

common liability. Fifth, the claimant must have extinguished the contribution defendant's liability for the injury or wrongful death. Sixth, if the liability was extinguished by settlement, the amount must be reasonable." (footnotes and citations omitted)). However, voters in Alaska later approved an initiative that rejected contribution and joint and several liability. Alaska's courts then had to find a way to balance public policy considerations with still allowing parties to bring nonparties into a case, or pursue contribution claims in a subsequent case, so that "a 'deep pocket' defendant could [not] be liable for 100% of the damages, no matter how small its percentage of fault." *Benner v. Wichman*, 874 P.2d 949, 956 (Alaska 1994).[14]

West Virginia and Texas, for example, recognize contribution claims, but only for persons who have *not* settled with the injured party. *See Grant Thornton, LLP v. Kutak Rock, LLP*, 228 W. Va. 226, 719 S.E.2d 394, 403 (2011) ("Where there is a single indivisible loss arising from the actions of multiple parties who have contributed to the loss, the fact that different theories of liability have been asserted against them does not foreclose their right of contribution *inter se* or prevent them from obtaining a verdict credit for settlements made with the plaintiff by one or more of those jointly responsible. . . . [However,] a party in a civil action who has made a good faith settlement with the plaintiff prior to a judicial determination of liability is relieved from any liability for contribution." (quotation marks, citations, and brackets omitted)); *Pemex Exploración y Producción v. Murphy Energy Corp.*, 923 F. Supp. 2d 961, 974 (S.D. Tex. 2013) ("The Texas Supreme Court held that 'a defendant can settle only his proportionate share of common liability and cannot preserve contribution rights under either the common law or the comparative negligence statute by attempting to settle the plaintiff's entire claim.' Under well-established Texas law, therefore, a settling tortfeasor is not

---

[14] *See also Pagenkopf v. Chatham Elec., Inc.*, 165 P.3d 634, 642 (Alaska 2007) ("[A]bsent any explicit statutory procedure, defendants must be allowed to file third-party claims for *equitable apportionment* against other potentially responsible parties." (footnote omitted)); *Benner*, 874 P.2d at 956 ("We had rejected equitable indemnity in *Vertecs v. Reichhold Chems., Inc.*, 661 P.2d 619 (Alaska 1983). Our holding in *Vertecs*, however, was that equitable indemnity was undesirable given the availability of contribution. Now that the voters have eliminated contribution through the initiative, equity requires that defendants have an avenue for bringing in others who may be liable to the plaintiff." (internal citation omitted) (citing *Robinson v. U-Haul Co.*, 785 F. Supp. 1378, 1380-81 (D. Alaska 1992), with approval)).

entitled to contribution from a non-settling tortfeasor." (quoting *Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex. 1987)). West Virginia further requires the party seeking contribution to have been sued in the initial lawsuit. *See Ruckdeschel v. Falcon Drilling Co., LLC*, 225 W. Va. 450, 693 S.E.2d 815, 823 (2010) (" 'It is an established principle that in West Virginia one joint tort-feasor is entitled to contribution from another joint tort-feasor. It is just as established, however, that a right to contribution can only be invoked by one of the joint tortfeasors *in the litigation*. When a tortfeasor elects to remain in the case he will be liable for contribution in favor of the other joint tortfeasor. If a tortfeasor is not a part of the litigation — whether because of a settlement or because the tortfeasor was not sued — our law is clear that no contribution may be had from that tortfeasor.' " (quotation marks, internal citations, brackets, and paragraph break omitted) (quoting *Jennings v. Farmers Mut. Ins. Co.*, 224 W. Va. 636, 687 S.E.2d 574, 578 (2009)).

By contrast, Connecticut, prior to "October 1, 1986 . . . followed the rules of joint and several liability with no right to contribution among joint tortfeasors at common law. After October 1, 1986, the legislature enacted tort reform to replace the rule of joint and several liability with a system of apportioned liability, which held tortfeasors liable for damages proportionate to their individual fault as determined by a fact finder." *Miller v. Castro*, case no. NNHCV156053967S, 2016 Conn. Super. LEXIS 347, at \*14-15 (Super. Ct. Feb. 17, 2016) (citing *Collins v. Colonial Penn Ins. Co.*, 257 Conn. 718, 778 A.2d 899, 907 (2001)). "Absent clear appellate authority, various Superior Courts have ruled that the right to contribution . . . exists only in post-judgment proceedings." *Id.* at \*16 (citations omitted). That is, Connecticut trial courts (because their state supreme court has not spoken yet) have allowed contribution in the following way:

> The right of contribution arises only after: (1) the claimant has gone to final judgment, (2) the claimant has failed to collect on one or more liable defendants after making good faith effort to do so, (3) the claimant has moved to open the judgment within one year after it becomes final for purposes of reallocation, (4) a reallocation is made by the court, and (5) a defendant is actually required to pay an amount in excess of his share of the original judgment.

*Id.* (quotation marks and citations omitted).

Distilling current law on contribution to a few key principles is particularly difficult because of the different approaches other jurisdictions

have taken. In fact, as another court noted, there really is no common approach across the country.

> Given the diversity of positions in other jurisdictions, it is hard to draw meaningful insights . . . . At the risk of overgeneralization, there appears to be a growing trend away from bright-line, all-or-nothing rules and towards concepts of relative fault and the allocation of responsibility among parties, including parties who have committed intentional torts. This trend includes movement towards permitting joint tortfeasors who have acted with a more culpable state of mind than negligence to seek contribution, although jurisdictions that permit contribution for intentional torts appear still to be in the minority.

*In re: Rural/Metro Corp.*, 102 A.3d at 235 (footnote omitted). Many courts construe their statutes to allow contribution "where one tortfeasor extinguishes the liability of another joint tortfeasor." *Modular Bldg. Consultants of W. Va., Inc. v. Poerio, Inc.*, 235 W. Va. 474, 774 S.E.2d 555, 564 (2015) (footnote omitted); *accord Estate of Powell*, 765 N.W.2d at 501 ("The UCATA places restrictions on contribution if a settlement has been entered into. A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable." (quotation marks and citation omitted)); *cf. Boeing Co.*, 2014 U.S. Dist. LEXIS 94736, at *13 ("This court believes that the CNMI Supreme Court would . . . determine that indemnity and contribution claims require that the claimant discharge a liability to a third party before bringing an indemnity or contribution claim.").

The majority of jurisdictions (albeit most by statute) recognize contribution claims. This factor is significant in the Court's analysis.

### 3. SOUNDEST RULE FOR THE VIRGIN ISLANDS

Contribution was first recognized as a right in the Virgin Islands over fifty years ago. *See Gomes*, 394 F.2d at 467-68.[15] Continuing to recognize

---

[15] Although *Gomes* was also reported in volume 6 of the Virgin Islands Reports, on pages 163 to 166, the portion of the opinion that adopted contribution for the Virgin Islands was not. It only appears in the version reported in the Federal Reporter, perhaps because the issue was addressed on petition for rehearing. *See* 394 F.2d at 467 ("Following our decision on the

the right to claim or demand contribution from persons or companies who may have played a role in causing someone else's injury is sound for the Virgin Islands.[16] "There is no . . . legitimate place in our system . . . for a rule of law which places the full burden of restitution upon one who is

appeal, a petition for rehearing was filed urging us to consider the further question: to what extent, if at all, should the judgment against appellant be reduced to reflect any right of contribution he might have.")

[16] The mandate of *Banks*, as extended and refined in later cases, concerns not only "blind reliance on the Restatements," *Connor*, 60 V.I. at 602, in the years after title 1, section 4 of the Virgin Islands Code was adopted, but also "[t]he power to shape the common law . . . which Virgin Islands judges only recently attained," *id.* at 604, a power that embraces both "determining the existence and elements of a common law cause of action, as well as when such an action accrues." *Simon v. Joseph*, 59 V.I. 611, 622-23 (2013) (citations omitted)). It is not clear, however, that such authority extends to setting aside controlling precedent. *Gomes* was decided on direct appeal, not from the District Court serving as the intermediate appellate court for the Virgin Islands, but from the trial court at the time when that court served (for the most part) as the court of general jurisdiction for the Territory. Under controlling precedent, *Gomes* is binding. *See Connor*, 60 V.I .at 605 n.1 ("[T]his Court has repeatedly held that the Superior Court should treat decisions of the United States Court of Appeals for the Third Circuit and the Appellate Division of the District Court as binding precedent with respect to issues of local law. However, in many such cases, Virgin Islands common law had been determined through rote application of 1 V.I.C. § 4 without any further analysis." (citing *In re: People of the V.I.*, 51 V.I. 374, 389 n.9 (2009)). And *Gomes* was not decided by rote reliance on the restatements. In fact, *Gomes* did not cite to any of the restatements approved by then or to section 4 of title 1, enacted ten years earlier. Instead, *Gomes* relied on other courts of last resort in support of its decision. *See* 394 F.2d at 467 n.1 ("In so deciding, with full recognition of our limitations, we feel we have reputable company." (citing *Knell v. Feltman*, 174 F.2d 662, 85 U.S. App. D.C. 22 (D.C. Cir. 1949); *Best v. Yerkes*, 247 Iowa 800, 77 N.W.2d 23 (1956); *Hobbs v. Hurley*, 117 Me. 449, 104 A. 815 (1918); *Duluth, Missabe & N. Ry Co. v. McCarthy*, 183 Minn. 414, 236 N.W. 766 (1931); *Am. Cas. Co. v. Billingsley*, 195 Tenn. 448, 260 S.W.2d 173 (1953); and *Ellis v. Chicago & Nw. Ry. Co.*, 167 Wis. 392, 167 N.W. 1048 (1918)).

While Virgin Islands judges (and, presumably, all courts applying Virgin Islands law) now have the power to shape our common law, it is not clear that such authority permits a court to reject a right or a cause of action previously recognized in controlling precedent that was not "wholly based on a belief that application of the Restatements or the majority rule was mandatory pursuant to 1 V.I.C. § 4 as in effect prior to this Court's ruling in *Banks*." *Connor*, 60 V.I. at 604 n.1. In other words, since *Gomes* did not rely on the restatement to recognize contribution, contribution may continue to be a claim under Virgin Islands law, until such time as the Supreme Court of the Virgin Islands modifies or overrules *Gomes* or the Legislature amends section 1451 of title 5 of the Virgin Islands Code. *Cf. Kruger v. Wells Fargo Bank*, 11 Cal. 3d 352, 113 Cal. Rptr. 449, 521 P.2d 441, 447 (1974) (" 'The right of setoff, while recognized by the statute, was not created by it. The right is grounded in general principals of equity.' " (quoting *Jojola v. Wells Fargo Bank, N.A.*, Civ. No. 71-900, 1973 U.S. Dist. LEXIS 15609, at *10 (N.D. Cal. May 8, 1973)). *Gomes* adopted contribution and the Legislature codified that right. *Accord Verge*, 16 V.I. at 52 n.7 (noting that *Gomes* was "[c]odi-

only in part responsible for . . . [another]'s loss." *Id.* at 467. Yet, even today, there still "is no simple, perfect solution to the problem of *how best to ascertain* the ultimate liability of the defendants to each other for contribution." *Lentz*, 441 F. Supp. at 896 (emphasis added).

Understandably, given the unyielding way in which courts in the Virgin Islands viewed the restatement mandate in the past, the various approaches offered by the restatements, as later adopted by courts applying Virgin Islands law, have become woven into Virgin Islands law on contribution. But, as the discussion above reveals, no particular rule has become so engrained in the Virgin Islands as to make abandoning such precedent unwise now. *Cf. Connor*, 60 V.I. at 603 (courts must "ascertain whether any other local courts have considered the issue and rendered any reasoned decisions upon which litigants may have grown to rely" in conducting their analysis (citing *Banks*, 55 V.I. at 981)). In fact, *Manbodh III* (the decision Litwin relies on) itself acknowledged that there was no binding precedent on this area of the law because neither the Third Circuit nor the Appellate Division had endorsed any particular rule yet. *See* 47 V.I. at 386.

██ While no specific approach to assessing contribution has come to be relied on in the Virgin Islands, litigants have come to rely on the different ways that contribution can be asserted. *Lentz*, *Brooks*, and *Martin* recognized that a defendant could demand or assert contribution against a co-defendant in the same action. In fact, *Brooks* and *Martin* went so far as to find claims between defendants for contribution "superfluous," 1979 U.S. Dist. LEXIS 15407, at *2, and "irrelevant," 17 V.I. at 481, because the court determined that contribution was mandatory under Virgin Islands law. Likewise, both *Beloit* decisions recognized that a defendant in one action could later seek contribution in a subsequent action against others who were not parties to the initial action. Similarly, *Dublin* and *Manbodh* and (after *Banks*) *Jacobs* and *Prentice* also recognized that contribution can be asserted in the same action through a third-party complaint. Continuing to recognize these different ways in which the right to contribution can be asserted is sound for the Virgin Islands. Accordingly, the Court concludes that the Virgin Islands should continue to allow a defendant to assert contribution and thereby bring

---

fied at 5 V.I.C. § 1451 (1973).") Deciding how contribution can be asserted under Virgin Islands law is certainly within this Court's common law authority.

other parties into a case who may be partly or wholly liable for a plaintiff's alleged injury. However, the Court does not agree that the right accrues *only* "[w]hen two or more persons are or may be liable for the same harm *and* one of them discharges the liability of another." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 23(a) (emphasis added). The practice in the Virgin Islands, at least in the Superior Court (and the Territorial Court before it), has been to allow a defendant to assert contribution against a nonparty and thereby bring such person into the lawsuit if (not because) that person may also be liable for the same harm as the defendant. That is, Virgin Islands courts have not limited the right to seek contribution to circumstances where the defendant has already discharged someone else's liability.[17]

▮ It certainly would be sound to continue the requirement that a defendant, before filing a separate or subsequent action for contribution against a nonparty, must have first borne "the full burden" while being

---

[17] This may not have been the case in the District Court. *Contra* FED. R. CIV. P. 13(a)(1) ("A pleading must state as a counterclaim any claim that — *at the time of its service* — the pleader has against an opposing party." (emphasis added)). Some courts have held that contribution claims are not mature until judgment is entered or a settlement is reached. *See, e.g., Stahl v. Ohio River Co.*, 424 F.2d 52, 54-55 (3d Cir. 1970) ("A claim for contribution is not a matured claim as contemplated under Rule 13(e) because such claim is contingent upon a verdict and judgment establishing liability of a party as a joint tortfeasor. Since Rule 13(e) has no provision which accelerates an unmatured claim, a claim for contribution may not be elevated to the subject matter of a counterclaim. . . . Rule 14 governing third-party practice does not sanction a procedure by which a party may plead as a counterclaim any claim which has not yet matured." (footnotes omitted); *Hardie v. Crecco*, Civ. No. 13-cv-092, 2014 U.S. Dist. LEXIS 41101, at *6 (D.N.H. Mar. 27, 2014) ("[F]or a person to bring a claim for contribution prior to judgment in an underlying suit, that person must have suffered a loss by virtue of having discharged the common liability. Thus, a pre-judgment claim for contribution remains premature until the contribution claimant has discharged the common liability. Because Crecco has not discharged the common liability, he does not appear to have a mature contribution claim, under New Hampshire law, for the purpose of Rule 13(a)(1). That, in turn, counsels against granting his motion to assert a counterclaim for contribution." (paragraph break omitted)). Presumably, federal courts reject "immature" contribution claims because there would be no case or controversy. However, because " 'Article III of the United States Constitution does not apply to local [Article IV] courts and no provision of Virgin Islands law includes a case-or-controversy requirement,' " *United Corp. v. Hamed*, 64 V.I. 297, 303 (2016) (quoting *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 687 n.8 (2015)) (other citations omitted), the maturity of a contribution claim might at most raise a prudential concern as to its ripeness. *But cf. Hansen v. O'Reilly*, 62 V.I. 494, 510 (2015) (citing *Ottley v. Estate of Bell*, 61 V.I. 480, 496-97 (2014), and explaining parenthetically that "subsequent events may ripen otherwise premature court proceedings.") (remaining citations omitted).

"only in part responsible for a plaintiff's loss." *Gomes*, 394 F.2d at 467. But when contribution is the vehicle by which another person, who is or may be liable for a plaintiff's injury, is brought into a pending case, Virgin Islands courts have not prohibited it. Contribution in the Virgin Islands has always concerned "the encouragement of voluntary settlements, the equitable distribution of liability among joint tort-feasors, and the elimination or minimization of collusion." *Id.* Once the factfinder apportions liability and judgment is entered accordingly, the third-party plaintiff will have extinguished the third-party defendants' liability once the judgment is satisfied, assuming the first-party plaintiff has not, in turn, asserted his claims against the third-party defendants.

 Nevertheless, the Court does find the reasoning of *Brooks* and *Martin* persuasive, to the extent that some claims for contribution are superfluous under certain circumstances. *Brooks* and *Martin* concerned cross-claims for contribution between defendants, whereas this case concerns a counterclaim for contribution but not by one third-party defendant against another third-party defendant. Rather, Shell's counterclaim is against the third-party plaintiff. Similar to *Brooks* and *Martin*, this Court finds a counterclaim for contribution by a third-party defendant and against a third-party plaintiff within a third-party action for contribution, superfluous.

 Contributory negligence raises a question about the actions of the plaintiff in contributing to his own injuries. Contribution, by analogy, raises a question about the actions of the parties in the case, or the actions of nonparties, who may have some responsibility for the plaintiff's injuries. A third-party defendant may be able to cross-claim for contribution against a third-party co-defendant. *Cf. Brooks*, 1979 U.S. Dist. LEXIS 15407, at *2 ("Of course, a cross-claim may be made against a co-party who 'is or may be liable' for all or part of the claim asserted. . . . [And] a judgment may be entered for contribution conditioned on a cross-claimant paying more than her share of a judgment." (quoting FED. R. CIV. P. 13(g)) (other citations omitted)). *But cf.* SUPER. CT. R. 34 (cross actions referred to as counterclaims). But a third-party action is, by definition, a case within a case. A first-party defendant becomes a third-party plaintiff by filing a third-party complaint and bringing other parties into the action. When the basis of the third-party complaint is contribution, the defendant/third-party plaintiff is still at risk of being found liable to the first-party plaintiff.

Counterclaiming against the third-party plaintiff for contribution is unnecessary since the jury must apportion all of the parties' liability.

## COMMON LAW INDEMNIFICATION

### 1. VIRGIN ISLANDS PRECEDENT

As with contribution, courts in the Virgin Islands have also recognized claims for common law indemnification for some time. *See, e.g., Frederick v. Hess Oil V.I. Corp*, 492 F. Supp. 1338, 17 V.I. 523, 528 (D.V.I. 1980) (observing in *dicta* that contractual indemnification may be means for third-parties to obtain indemnification from employers for damages paid to employees because "[i]ndemnification under common law tort principles cannot be allowed since it would run contrary to the provisions of the Workmens' Compensation Act" (citations omitted)); *Freeman*, 19 V.I. at 580 (noting in dicta that "equitable indemnity" or "common law indemnification is strictly an equitable remedy which may be granted without regard to express or even implied contractual provisions." (citing RESTATEMENT (FIRST) OF RESTITUTION p. 1 (1937)). However, the first case to analyze and discuss common law indemnification was *Dublin*.

The court in *Dublin* began its discussion of common law indemnification by acknowledging that the Third Circuit had recognized contribution in *Gomes*, but had not had occasion since then to consider the "right to indemnity among joint tortfeasors." 15 V.I. at 225-26. Yet, the same "policy considerations that prompted the court in *Gomes* to recognize a right to contribution are equally applicable," the *Dublin* court reasoned, "if not more so, to indemnity, which has received a far greater acceptance at common law." *Id.* at 226 (citations omitted). The *Dublin* court also noted that the Third Circuit, in a decision after *Gomes*, had discussed common law indemnification, but without pausing first "to consider the nature of the right or to determine whether it existed under Virgin Islands law." *Id.* (citing *Silverlight v. Huggins*, 488 F.2d 107, 10 V.I. 638 (3d Cir. 1973)). The court in *Dublin* did and concluded that there is "ample authority for recognition of such a right." *Id.*

Relying on the Restatement (First) of Restitution as well as a 1972 tentative draft of section 886B of the RESTATEMENT (SECOND) OF TORTS, *Dublin* held "that a right to contribution or indemnity against a joint tortfeasor exists in the Virgin Islands." *Id.* at 227. Although the court did

72

not adopt any specific elements or address what was necessary to state a claim for indemnity, the court did footnote the language of the tentative draft of Section 886B. *See id.* at 226 n.9; *accord* RESTATEMENT (SECOND) OF TORTS § 886B (1979). That draft language provides as follows: "If two persons are liable in tort to a third person for the same harm, and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability." *Id.* (citation omitted). Most relevant here to Litwin's motion to dismiss, *Dublin* recognized that indemnification may be available if a person "supplied a defective chattel" to another or "created a dangerous condition of . . . chattels," and the person who purchased or used the defective chattel "innocently or negligently failed to discover the defect" and, as a result, "both were liable." *Id.* (citations omitted). The next case after *Dublin* to discuss common law indemnification was *Continental Casualty Company v. United States Trust Company of New York*, 19 V.I. 289 (D.V.I. 1982).[18]

Barry Allaire had rented a house on St. Croix from Philip M. Childs. *Id.* at 291; *see also Allaire v. U.S. Trust Co.*, 478 F. Supp. 826, 827 (D.V.I. 1979). Sometime later, Mr. Allaire injured himself when he fell through an open hole in a corner of the deck or porch extending off from the house. 478 F. Supp. at 827; *accord* 19 V.I. at 291. Mr. & Mrs. Allaire filed a lawsuit in 1978 against Mr. Childs's estate and the architect who designed the home (including the deck), John R. McDonald. The court dismissed the Allaires' complaint against Mr. Childs's estate for failure to state a claim. 478 F. Supp. at 828 ("Because the porch itself is not vital to the use of the home for residential purposes, the alleged defect in the porch, the opening, did not violate the implied warranty of habitability. Such a defect is not covered by the implied warranty."). The Allaires then settled with the remaining defendant, Mr. McDonald, before trial. 19 V.I. at 291. Subsequently, Mr. McDonald and his insurance company, Continental, filed their own lawsuit in 1981 against Mr. Childs's estate for

---

[18] But note that *Martin* had determined that indemnification and contribution should proceed the same way at trial. *See* 17 V.I. at 481-82 (directing how ("[C]ross-claims for contribution and, as established by the case at bar, cross-claims for non-contractual indemnity will not be stricken. Instead, the goals of avoiding confusion of jurors and prejudice to cross-claiming defendants will be achieved by prohibiting reference to cross-claims for contribution or non-contractual indemnification during argument, testimony or jury instructions.").

common law indemnification. *See id.* The estate moved to dismiss the complaint for failure to state a claim.

In ruling on the motion, the court in *Continental* first observed that "[a] claim for noncontractual indemnity is recognized by the Restatement of Restitution (1937)," specifically section 86. *Id.*

> The underlying principle of this type of implied immunity among tortfeasors is that a tortfeasor whose negligence may be characterized as "passive" should not be compelled to pay damages that ought to have been paid by another wrongdoer whose negligence can be labeled as "active" or "primary." "Accordingly, it is generally held that a person, who, without fault on his part, has been compelled to pay damages is entitled to recover indemnity where . . . the plaintiff is only technically or constructively liable to the injured part, or where his liability was based on a legal or contractual relationship with the defendant."

*Id.* at 292 (quoting 41 AM. JUR. 2D *Indemnity* § 20 (1968)). Common law indemnification is not available for "losses for which the defendant-indemnitor is clearly not liable and/or which the plaintiff-indemnitee has mistakenly or improperly paid," the court reasoned. *Id.* But indemnification is available even though a party may have settled: " 'The fact of voluntary payment does not negative the right to indemnity, since a person confronted with an obligation that he cannot legally resist is not obligated to wait to be sued and to lose a reasonable opportunity for compromise.' " *Id.* (quoting 41 AM. JUR. 2D *Indemnity* § 33 (1968)). "Because the two co-defendants in the *Allaire* action were never drawn into such a direct controversy — by way of cross-claims or otherwise — none of the issues arising . . . [in] the present lawsuit were decided or even litigated," the court concluded. *Id.* at 294. In other words, determining between Mr. Childs and Mr. McDonald, i.e., between the homeowner and the architect, who was actively negligent and who was passively negligent did not occur in *Allaire*. So, the court denied the estate's motion to dismiss.

The next case after *Continental* to discuss common law indemnification was *Manbodh I.* As noted in the previous section, *Manbodh I* concerned a motion filed by a third-party defendant, Fluor, to dismiss HOVIC's third-party complaint for failure to state a claim. *See* 2002 V.I. LEXIS 40, at *1. In addition to common law contribution, HOVIC also asserted common law indemnification. In ruling on Fluor's

74

motion to dismiss, the court held that "[i]ndemnification is a common law remedy, relief of which stems from the relationship of the parties." *Id.* at *5. Relying on the Restatement (First) of Restitution, the court concluded that the law in the Virgin Islands was as follows:

> A person who, without fault on his part, has been compelled to pay damages is entitled to recover indemnity where, as between the parties in the indemnity action, the defendant is primarily liable while the plaintiff is only secondarily liable, that is, where the plaintiff is only technically or constructively liable to the injured party, or where his liability was based on a legal or contractual relationship with the defendant.

*Id.* at *5-6 (citation omitted). The court further observed that "[b]oth the Restatement of Restitution and the Restatement (Second) of Torts recognize a right to indemnification from a joint tortfeasor." *Id.* at *6 (citing *Dublin*, 15 V.I. 214). Yet, notwithstanding the concerns raised in *Dublin*, regarding the absence of controlling precedent, *Manbodh I* did not address directly what law — whether the restatement of restitution, the restatement of torts, or some other authority — should govern common law indemnification. Instead, HOVIC's third-party complaint was sufficient to give Fluor notice, so the motion to dismiss was denied. *See id.* at *11.

Similarly, in denying Rubber & Gasket ("R & G") Company's motion to dismiss, the court in *Manbodh II*, noted that HOVIC had asserted its contractual indemnification and common law indemnification claims "in the alternative" and explained that HOVIC's common law indemnification claim "arises from HOVIC's purported passive liability for the exposure of the First-Party Plaintiffs to toxic substances." 47 V.I. at 289 (footnote omitted). "Regardless of whether R & G was negligent," the court concluded, "HOVIC may have a viable cause of action against R & G as pled based on strict liability, as long as there were no intervening or superseding causes." *Id.* at 292 (footnote omitted). In a footnote, the court further elaborated that

> R & G assumes, without basis, that HOVIC may not have a strict liability theory and that an absence of negligence will have some relevance to its motion to dismiss. Given that the Plaintiffs brought strict products liability claims against HOVIC and that those claims were settled, an absence of negligence by R & G will not shield it from

liability in at least *a common law indemnification setting*, where R & G may be liable notwithstanding any absence of negligence. Thus, there are facts where, if they are true as pled, HOVIC would have a cause of action.

*Id.* at 292 n.44 (emphasis added).

Common law indemnification was again at issue in *Manbodh III*, 47 V.I. at 377-78. There, the court noted the "limited guidance for courts concerning common law indemnification as no statutes codify common law indemnification, nor do any Virgin Islands appellate courts specifically recognize such a cause of action." *Id.* at 390-91 (footnote omitted). As discussed in the prior section, the third-party defendants argued in *Manbodh III* that the newest restatement should govern, while the third-party plaintiffs, HOVIC and Litwin, countered that *Dublin* and the older restatement should apply. *Id.* at 385 ("HOVIC and Litwin argue that the adoption of the provisions of the RESTATEMENT (SECOND) OF TORTS by *Dublin* . . . precludes the application of the RESTATEMENT (THIRD): APPORTIONMENT OF LIABILITY to common law indemnification actions. According to HOVIC and Litwin, continued reliance on *Dublin* is justified because the RESTATEMENT (SECOND) constitutes the prevailing common law of the United States." (footnote omitted)). The court agreed with *Dublin* that, "because a cause of action for common law indemnification has received far greater acceptance at common law than one for contribution, this Court continues to recognize such a cause of action." *Id.* at 391 n.13 (citation omitted). But the court disagreed regarding the law that applied.

In its analysis, the court in *Manbodh III* first acknowledged that the Restatement (First) of Restitution could apply, but then rejected it, apparently only because it no longer reflected the majority position on contribution. *See id.* at 392 (citing *In re: Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. 215, 237 (Super. Ct. 2005) (*"Manbodh V"*)) (other citations omitted)). After comparing the Restatement (Second) of Torts and Restatement (Third) of Torts, the court ultimately settled on the Restatement (Third):

The RESTATEMENT (THIRD) OF TORTS reflects the recent trend in limiting common law indemnification to situations where the plaintiff is not negligent. Previously, under the RESTATEMENT (SECOND) OF

76

TORTS, a negligent plaintiff could recover from a more negligent defendant in indemnification because such a result was necessary to soften the harshness of the rule of pro-rata contribution. As a result of the trend towards comparative fault, indemnification is not permissible under the RESTATEMENT (THIRD) OF TORTS where both parties are actively negligent, though one, perhaps, to a lesser degree. . . .

. . . .

In sum, while both the RESTATEMENT (SECOND) and the RESTATEMENT (THIRD) contain more modern approaches to common law contribution and indemnification, the RESTATEMENT (THIRD) represents the current majority substantive law. In the RESTATEMENT (THIRD), the drafters promote the interests of both flexibility and judicial economy by supplying security for settlors. Additionally, the RESTATEMENT (THIRD) abandons the perversion of indemnification dictated by the RESTATEMENT (SECOND)'s allegiance to pro-rata contribution, previously allowing for indemnity when the plaintiff was negligent, though comparatively less so than the defendant. Finally, the RESTATEMENT (THIRD) framework is also specifically tailored for application with comparative fault statutes, a majority position, as the indemnification discussion illustrates. For all of these reasons, and in an effort to establish the best total set of rules by bridging the gaps in substantive tort law, this Court acknowledges the current majority rule and adopts the provisions of the RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY, Topic 3 for the substantive requirements for common law contribution and indemnification.

*Id.* at 393-94 (citations omitted).

As with contribution, following the *Manbodh* decisions, the few courts who have questioned what law governs common law indemnification have largely followed *Manbodh III* and applied the RESTATEMENT (THIRD) OF TORTS. *See, e.g., Am. Int'l Ins. Co.*, 307 Fed. Appx. at 648-50 (citing *Manbodh*, 47 V.I. 375 and applying sections 22-24 of the RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY); *Remy*, 2008 U.S. Dist. LEXIS 57585, at *2; *Jacobs*, 2015 V.I. LEXIS 58, at *3 ("The Court finds that the RESTATEMENT (THIRD) OF TORTS-APPORTIONMENT OF LIABILITY Sections 22 and 23 are an expression of the common law of this jurisdiction and finds it proper to adopt and apply Sections 22 and 23 here. RESTATEMENT (THIRD) OF TORTS-

APPORTIONMENT OF LIABILITY § 22 provides the elements of claims for indemnity."). *But cf. Prentice*, 2015 V.I. LEXIS 98, at *6 ("Metro Door relies heavily on *In re [Kelvin] Manbodh Asbestos Litigation* and the Restatement (Third) of Torts . . . as the substantive law for contribution and indemnification. However, in light of *Connor*, the Superior Court is charged with shaping the law of the Virgin Islands and can no longer mechanistically apply the Restatements."). As discussed in the prior section, *Jacobs* too relied on *Manbodh* but still "conducted a limited *Banks* analysis." 2015 V.I. LEXIS 58, at *4. Predictably, *Jacobs* concluded that Section 22 represents current Virgin Islands precedent, but without considering any other approach, whether in the Virgin Islands or elsewhere.

Courts applying Virgin Islands law have consistently recognized common law indemnification. This factor has significant weight for purposes of this *Banks* analysis.

### 2. POSITION TAKEN BY OTHER JURISDICTIONS ON COMMON LAW INDEMNIFICATION

As can be expected, considering that the United States at present comprises fifty States, five Territories, and the District of Columbia, different approaches to common law indemnification, like contribution, have arisen around the country.

Colorado and Oregon, for example, allowed common law indemnification at one time, but now do not.[19] Georgia recognizes common law indemnification, but only in certain instances. *See, e.g., Dist. Owners Ass'n v. AMEC Envtl. & Infrastructure, Inc.*, 322 Ga. App. 713,

---

[19] *See, e.g., Premier Members Fed. Credit Union v. Block*, 312 P.3d 276, 280-81 (Colo. Ct. App. 2013) ("[I]n 1986, our supreme court in *Brochner v. Western Insurance Co.*, 724 P.2d 1293, 1299 (Colo. 1986), abolished the common law doctrine of indemnity as between two joint tortfeasors, in light of [the Uniform Contribution Among Tortfeasors Act] UCATA's adoption of the principle of contribution among joint tortfeasors. Consequently, one of two joint tortfeasors can no longer maintain an indemnity claim against the other for reimbursement of the entire amount paid as damages to the injured party."); *Eclectic Inv., LLC v. Patterson*, 357 Ore. 327, 354 P.3d 678, 679 (2015) (explaining that Oregon's comparative negligence statute "requires that a trier of fact compare the negligence of multiple tortfeasors and that damages be awarded in accordance with the percentages of fault determined by the trier of fact . . . . Thus . . . tortfeasors are liable only for their own negligence, and a jury determines the relative fault and responsibility of each tortfeasor — a judicially created claim for common-law indemnity is unnecessary.").

747 S.E.2d 10, 13 (2013) ("Georgia law continues to recognize two broad categories of indemnity: as created by contract, as between a surety and a debtor; and under the common law of vicarious liability, as between principals and agents. Specifically with regard to the latter category, if a person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action for indemnity against the person whose wrong has thus been imputed to him." (quotation marks, brackets, footnotes, and citations omitted).

Arkansas, the District of Columbia, Florida, New York, and Mississippi, for example, restrict common law indemnification to certain "special" or "legal" relationships. *See, e.g., Larson Machine, Inc. v. Wallace*, 268 Ark. 192, 600 S.W.2d 1, 12 (1980) ("The right to indemnity, where one of the parties is not liable to the injured party for a joint wrong, must be based upon a relationship *other than that of joint tortfeasors*. But it may arise from a special relationship between the parties. Of course, it is a legal relationship that is required." (emphasis added) (citations omitted)); *Howard Univ. v. Good Food Servs., Inc.*, 608 A.2d 116, 122-23 (D.C. 1992) ("An obligation to indemnify exists where the equities of the case and the relationship of the parties support shifting responsibility from one party to another. Common examples include: a car owner, liable to a third party for injuries caused by his or her car, who seeks indemnification against the driver of the car who negligently caused the third party's injuries; an employer, liable to a third party for injuries caused by his or her employee, who seeks indemnification against the employee whose negligence caused the harm. In the absence of an express contractual duty to indemnify, a right to indemnity exists where a duty to indemnify may be *implied out of a relationship between the parties* to prevent a result which is unjust." (emphasis added) (citations omitted)); *Fla. Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc.*, 171 So. 3d 194, 196 (Fla. Ct. App. 2015) ("Florida courts have required a special relationship between the parties in order for common law indemnification to exist. However, the term special relationship merely describes a relationship which makes a faultless party only vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party at fault." (quotation marks, brackets, and citations omitted)); *McCarthy v. Turner Constr., Inc.*, 17 N.Y.3d 369, 953 N.E2d 794, 798-99, 929 N.Y.S.2d 556 (2011) ("A party's right to indemnification may arise

from a contract or may be implied based upon the law's notion of what is fair and proper as between the parties. Implied, or common-law, indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other. Common-law indemnification is generally available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer. Consistent with the equitable underpinnings of common-law indemnification, our case law imposes indemnification obligations upon those actively at fault in bringing about the injury, and thus reflects an inherent fairness as to which party should be held liable for indemnity." (quotation marks, citations, brackets, and paragraph break omitted)); *Home Ins. Co. v. Atlas Tank Mfg. Co.*, 230 So. 2d 549, 551 (Miss. 1970) ("Two critical prerequisites are generally necessary for the invocation of noncontractual implied indemnity in Mississippi: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and (2) it must appear that the claimant did not actively or affirmatively participate in the wrong." (citations omitted)).

Other jurisdictions, such as Connecticut, Idaho, and Mississippi focus not on the relationship (or in Mississippi not solely on the relationship), but rather on who was actively negligent versus who was passively negligent. *See, e.g., ATC P'ship v. Coats N. Am. Consol., Inc.*, 284 Conn. 537, 935 A.2d 115, 125 (2007) ("[T]ortious indemnification is an action that arises between two tortfeasors, 'one, whose passive negligence resulted in a monetary recovery by the plaintiff; and a second, whose active negligence renders him liable to the first by way of reimbursement.' " (quoting *Smith v. New Haven*, 258 Conn. 56, 779 A.2d 104, 110 (2001))); *Beitzel v. City of Coeur d'Alene*, 121 Idaho 709, 827 P.2d 1160, 1168-69 (1992) (" 'The general rule governing implied indemnity for tort liability is that a joint tort feasor, whose liability is secondary as opposed to primary, or is based upon imputed or passive negligence, as opposed to active negligence, or is negative negligence as opposed to positive negligence, may be entitled, upon an equitable consideration, to shift the joint tort feasor's responsibility to another joint tort feasor. However, where the fault of each is equal in grade and similar in character, the doctrine of implied indemnity is not available since no one should be permitted to base a cause of action on the party's own wrong. Thus, the determination of whether or not indemnity should be

allowed must of necessity depend upon the facts of each case.' " (brackets omitted) (quoting *Home Ins. Co.*, 230 So. 2d at 551). By contrast, Wyoming has adopted a somewhat modified approach to the active/passive distinction. *See Schneider Nat'l v. Holland Hitch Co.*, 843 P.2d 561, 578-79 (Wyo. 1992) ("We hold that indemnity liability is to be allocated among the parties proportionately to their comparative degree of fault in actions for equitable implied indemnity premised on the negligent breach of a duty between the indemnitor and the indemnitee. Under this modified or partial form of equitable implied indemnity, the distinctions of 'active' and 'passive' negligence, while no longer determinative of the ability to seek indemnity, are factors to be weighed by the jury in assessing the percentage of fault of the parties. Typically, a jury would be instructed, in a third-party action, that if the third-party defendant is found to have performed certain acts or omissions constituting negligence for which indemnity is permitted as a matter of law, and those acts or omissions contributed to cause the injuries and damage to the original plaintiff, then the third-party plaintiff should be awarded partial indemnity. The partial indemnity award is a proportion of the total sum paid by the third-party plaintiff to the original plaintiff corresponding to the degree of fault of the third-party defendant." (footnote and citations omitted)).

Because, historically, indemnity concerned "the right of *complete reimbursement* to one party who has been compelled by law to pay what the other party should pay," *Howard Univ.*, 608 A.2d at 122 (emphasis added) (citation omitted), many jurisdictions make the party seeking indemnification prove that it was not at fault in causing the plaintiff's injuries. *Cf. Larson Machine, Inc. v. Wallace*, 268 Ark. 192, 600 S.W.2d 1, 12 (1980) ("It has been appropriately said that the doctrine of indemnity is based upon the equitable principles of restitution which permit one who is compelled to pay money, which in justice ought to be paid by another, to recover the sums so paid unless the payor is barred by the wrongful nature of his own conduct." (citations omtted)); *Fla. Peninsula Ins. Co.*, 171 So. 3d at 196 (Fla. Ct. App. 2015) ("To plead a cause of action for common law indemnity in Florida, the party seeking indemnity must allege three elements: 1) that he is wholly without fault; 2) that the party from whom he is seeking indemnity is at fault; and 3) that he is liable to the injured party only because he is vicariously, constructively, derivatively, or technically liable for the wrongful acts of

the party from whom he is seeking indemnity." (quotation marks and citations omitted)); *Carr v. Home Ins. Co.*, 250 Va. 427, 463 S.E.2d 457, 458 (1995) ("Equitable indemnification arises when a party *without personal fault*, is nevertheless legally liable for damages caused by the negligence of another. Equitable principles allow the innocent party to recover from the negligent actor for the amounts paid to discharge the liability." (emphasis added) (citations omitted)); *see also Phillip Morris, Inc. v. Emerson*, 235 Va. 380, 368 S.E.2d 268, 285 (1988) ("If a defendant is guilty of active negligence, he may not obtain indemnification from any other defendant." (citations omitted)). *But cf. Arizona MT Builders, LLC v. Fisher Roofing, Inc.*, 219 Ariz. 297, 197 P.3d 758, 764 n.2 (Ct. App. 2008) ("[I]n an action for common law indemnity, the indemnity plaintiff must show, first, it has discharged a legal obligation owed to a third party; second, the indemnity defendant was also liable to the third party; and third, as between itself and the defendant, the obligation should have been discharged by the defendant." (citations omitted)).

Clearly, the overwhelming majority of jurisdictions recognize common law indemnification claims. This factor weighs in favor of continuing to recognize such claims in the Virgin Islands.

### 3. SOUNDEST RULE FOR THE VIRGIN ISLANDS

What is clear from the parties' arguments — and from the state of the law around the country, including the Virgin Islands — is that the distinction between common law indemnification and common law contribution has become blurred. It is in part for this reason that this Court is not comfortable following the Restatement (Third) of Torts. As the reporter's notes to Section 22 makes clear:

> Comment e *changes* the rule in RESTATEMENT SECOND, TORTS § 886B. Section 886B sometimes provided for indemnity in favor of a negligent indemnitee. Subsection 886B(d) provided for indemnity if the indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both the indemnitee and indemnitor were liable to the third person, and the indemnitee innocently *or negligently* failed to discover the defect. There is support elsewhere for a negligent party being able to obtain indemnity. One situation is when the indemnitor was actively negligent and the

82

indemnitee was passively negligent. These doctrines were developed before comparative responsibility. They avoided the harsh effect of pro rata contribution when one of the tortfeasors was substantially more culpable than the other. They are *inconsistent with* the goals of comparative responsibility.

RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22 rptr notes to cmt (e) (2000) (first and third emphasis added) (quotation marks, citations, and paragraph breaks omitted)).

 The American Law Institute, in promulgating revisions to its restatements of the law, has begun, not only to restate the law, but also to revise the law. *See Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 185 n.5 (2009) ("[N]ot all Restatement provisions restate the common law, but may restate statutory law or even *promote new rules preferred by the drafters*." (emphasis added) (citing Frank J. Vandall, *A Critique of the Restatement (Third), Apportionment as it Affects Joint and Several Liability*, 49 Emory L.J. 565, 619 (2000)) (additional citation omitted)); *see also Manbodh V*, 47 V.I. at 232 ("[T]the decision to ignore precedent and apply the newest Restatement may be attacked because in some circumstances, as with the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY Topic 1 (sections 1 through 4), the Restatement does not represent the majority rule, but instead endorses a minority rule favored by legal scholars." (citing Ellen Werthemier, *The Third Restatement of Torts: An Unreasonably Dangerous Doctrine*, 28 Suffolk U. L. Rev. 1235, 1244-45 (1994))). Before a supreme court was established for the Virgin Islands, courts by and large felt compelled, in light of section 4 of title 1 of the Virgin Islands Code, to apply some version of the restatements, whether the newest version or the oldest version. *Compare Manbodh V*, 47 V.I. at 237 ("This Court concludes that title 1, section 4's reference to the 'restatements' refers to the Restatement in existence at the time of its enactment in 1957 and reflects an intent to fill a void until such a time when the Legislature codified law or the judicial branch confirmed the propriety of particular Restatements."), *with Hartzog v. United Corp.*, 59 V.I. 58, 80 (Super. Ct. 2011) ("This Court is not convinced that earlier restatements remain in force simply because courts have applied them. The application of more recent restatements should not be forestalled 'until the Legislature or appellate courts apply such a directive.'" (quoting *Manbodh V*, 47 V.I. at 243)). Now that the Supreme Court of the

Virgin Islands has been established and, in particular, now that the Superior Court also has a responsibility to develop the common law of the Virgin Islands, courts cannot blindly follow past precedent, even if only persuasive precedent, if that precedent was "wholly based on a belief that application of the Restatements or the majority rule was mandatory pursuant to 1 V.I.C. § 4 as in effect prior to this Court's ruling in *Banks*." *Connor*, 60 V.I. at 604 n.1.

*Connor*'s command is especially apt here because neither *Manbodh III*, nor Section 22 of the RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY, has gained widespread acceptance in the Virgin Islands. Of the cases that have relied on *Manbodh III*, the majority have cited it in support of courts being able to consider "items of unquestioned authenticity that are referred to in the challenged pleading and are integral to the pleader's claim for relief" when ruling on a motion to dismiss. *Manbodh III*, 47 V.I. at 382.[20] The cases that did rely on the holding in *Manbodh III* that Section 22 is Virgin Islands common law on indemnification, three were issued before *Banks*, see *Am. Int'l Ins. Co.*, 307 Fed. Appx. at 649-50; *Vandenhouten*, 52 V.I. at 559-60; *Remy*, 2008 U.S. Dist. LEXIS 57585, at *2, and the fourth was issued after *Banks*, but before *Connor*. See *Davis v. Sunrise Med. (US), LLC*, Civ. No. 2012-29, 2013 U.S. Dist. LEXIS 99711, at *13-15 (D.V.I. July 17, 2013).

Litwin contends that, because *Manbodh III* adopted the Restatement (Third), that decision has become "local common law," so "reliance upon . . . [the] comments and authorities within . . . [that Restatement] is proper in order to define, clarify, or expand upon the provisions." (Mot. 4.) Yet, as Shell correctly points out, *Manbodh* is just persuasive. (*See* Opp'n 3.) Both parties in their motion papers touch on a key difference between the Restatement (Second) and the Restatement (Third). Section 22 of the Restatement (Third) is "couched in contingent terms, allowing for claims to be asserted prior to judgment or satisfaction . . . employing

---

[20] *See Arvidson v. Buchar*, ST-16-CV-410, 2017 V.I. LEXIS 21, at *2 (Super. Ct. Feb. 2, 2017) (footnote omitted) (quoting *Manbodh III*, 47 V.I. at 382)); *ResQwest-Axiom Servs., Ltd. v. Cruz Bay Watersports, Inc.*, ST-16-CV-384, 2016 V.I. LEXIS 194, at *2 (Super. Ct. Nov. 30, 2016) (same); *Fenster v. DeChabert*, 65 V.I. 20, 37 (Super. Ct. 2016) (same); *Cenni v. Estate Chocolate Hole Landowners Ass'n*, ST-15-CV-383, 2016 V.I. LEXIS 98, at *13 (Super. Ct. July 18, 2016) (same); *Ford v. V.I. Dept. of Educ.*, ST-15-CV-489, 2016 V.I. LEXIS 83, at *6 (Super. Ct. June 27, 2016) (same).

the language, 'When two or more persons are *or may* be liable.' " (Mot. 7 (quoting RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22(a)).) In contrast, the Restatement (Second) provides: "If two persons *are liable* in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability." RESTATEMENT (SECOND) OF TORTS § 886B(1) (emphasis added). Shell contends that, because "[t]he Restatement employs the word 'may,' " it allows an indemnification claim to be based on "the mere potential for harm." (Opp'n 4.) That is, liability need not have already been established under the Restatement (Third).

To resolve the question raised here, it is helpful to understand what is not at issue. Unlike in *Continental*, this is not a separate action for indemnification. Litwin did not file a lawsuit against Shell as a first-party plaintiff, nor has Shell filed a lawsuit against Litwin. Furthermore, Mr. Willie has only settled with UOP to date. Thus, Litwin's motion, unlike *Manbodh III*, does not concern whether the party seeking indemnification (Shell) has settled and discharged the liability of the other party (Litwin). Rather, none of the first-party defendants or the third-party defendants have been found liable (at least not yet) by the jury for causing harm to Mr. Willie. Should this matter proceed to trial, each party will present its case and the jury will apportion liability, if any. *See* 5 V.I.C. § 1451(d). What is at issue here, then, is whether Shell, a third-party defendant, can assert a claim for common law indemnification against Litwin, a third-party plaintiff.

This Court believes that the soundest rule for the Virgin Islands is to continue recognizing claims for common law indemnification. As with contribution, Virgin Islands courts have allowed common law indemnity claims to be pursued within an existing action as a counterclaim or a third-party complaint like in *Manbodh* and *Continental*, or in a subsequent action, as in *Freeman Caribbean Associates*. The Court also agrees that before a party can prevail on, but not plead, a common law indemnification claim, there must have been a determination that the person who initially brought suit (in this case, Mr. Willie) was in fact injured. "A prerequisite to recovery based on equitable indemnification is the initial determination that the negligence of another person caused the damage. Without that determination, neither the negligent actor nor the

innocent party can be held liable for the damages claimed." *Carr*, 463 S.E.2d at 458.

 The Court agrees with Litwin that common law indemnification is a derivative claim, meaning it derives from some other cause of action. (*See* Mot. 4 ("[C]ontribution and indemnity are considered to be contingent or 'derivative actions.' ") The Court also agrees with both parties that a claim for common law indemnification can be asserted after a party has been found liable in a separate action, *see Continental*, 19 V.I. at 292 n.1, or before in the same action through a counterclaim or third-party complaint. *Cf.* SUPER. CT. R. 34 ("All claims in the nature of . . . cross-action, or any other claim for relief . . . shall be asserted in an answer as a counterclaim"); FED. R. CIV. P. 14(a)(1). *Accord* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22 cmt. i (2000) ("Indemnity may normally be recovered in a third-party claim in the suit where the indemnitee is sued by the plaintiff or in a separate lawsuit. That issue is governed by the appropriate procedural rules of each jurisdiction."); *Vandenhouten v. Olde Towne Tours, LLC*, 52 V.I. 551, 560 (D.V.I. 2009) ("Rule 14(a) clearly permits a third-party complainant to maintain an indemnity claim against a third-party defendant in the action in which the third-party complainant has been named as a defendant. The rule plainly contemplates that such a claim may be asserted before the third-party complainant's liability is determined." (citations omitted)).

 As with contribution, Virgin Islands courts have allowed common law indemnification claims to be asserted in the same action through a third-party complaint, as in *Dublin* and *Manbodh*, or in a separate action, as in *Continental*. But Litwin is simply incorrect that

> [a] prerequisite to Litwin's indemnification of Shell is that Shell be found liable to Terence Willie. That cannot happen here. It cannot happen since Terence Willie hasn't sued Shell. Whatever happens at trial in this case, in no universe will there be a verdict for the Plaintiff against Shell because the Plaintiff did not sue Shell.

(Mot. 6.) Litwin brought Shell into this action by filing a third-party complaint for contribution. In essence, Litwin said to the court, to Mr. Willie, and to the other defendants that it might not be the only one allegedly at fault, that others may bear some of the blame for Mr. Willie's injuries. While a judg-

ment may not be entered in favor of Mr. Willie's estate and against Shell, since Mr. Willie did not assert his claims against Shell, *cf.* FED. R. CIV. P. 14(a)(3), the jury will nonetheless have to apportion Shell's responsibility, if any, for Mr. Willie's injuries because Litwin sued Shell for contribution. In other words, Shell's share of the blame (if any) must be assessed. But contribution and indemnification are not the same. "Indemnification and contribution differ in the extent to which a tortfeasor is able to rid himself of liability. Where the *entire liability* shifts, indemnification is invoked; on the other hand, where *liability is shifted only proportionately*, contribution exists instead." *De Laval Turbine, Inc. v. W. India Indus., Inc.*, 502 F.2d 259, 11 V.I. 220, 241 n.17 (3d Cir. 1974) (emphasis added).

██ In this vein, the Court agrees with the other courts that have concluded that conceptualizing indemnification in terms of "both parties [being] . . . actively negligent, though one, perhaps, to a lesser degree," *Manbodh III*, 47 V.I. at 393 (citation omitted), is unhelpful; *accord Eclectic Inv., LLC v. Patterson*, 261 Ore. App. 457, 323 P.3d 473, 476 (2014) ("[C]ourts have observed that the active/passive and primary/secondary determinations are frequently unhelpful." (citation omitted)). Rather, the focus should be on the relationship between the parties. *Cf. Davis*, 2013 U.S. Dist. LEXIS 99711, at *15 ("Given the absence of any allegations *regarding the relationship* between the alleged indemnitor — Davis-Lorton — and indemnitee — the Medicine Shoppe — the indemnity claim presently appears to be deficiently pleaded." (emphasis added)). Similarly, courts have also concluded indemnification ultimately requires "a person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other." *Guardian Ins. Co.*, 63 V.I. at 13 (footnotes omitted). Focusing on whether one party has discharged a duty owed to another party is misleading. The question is not whether one has a duty to pay another person's tort liability. Rather, the question is whether one person was obligated to settle with an injured party or satisfy a judgment that someone else should have to pay.

Rather than perpetuate any confusion that may be lingering after *Banks* and *Connor* by adopting one restatement section or provision over another, the Court will instead state what law it believes should apply here. This is an important point Litwin and Shell fail to appreciate because, in arguing their positions, Litwin and Shell frame the question as which restatement provision is the soundest to adopt. However, as the

Supreme Court clarified recently, the question is what common law rule to adopt, if any. *Cf. Antilles School v. Lembach*, 64 V.I. 400, 409 n.1 ("[T]he fact that this Court may have cited to — or even adopted a section of — a particular Restatement should not be construed as a wholesale adoption of the Restatements. This is illustrated by several decisions of this Court where it has agreed with a single Restatement section and then rejected another section found in the same Restatement." (quotation marks and internal citation omitted)). It is understandable that Shell and Litwin did not appreciate this point, because the Supreme Court itself held in *Banks* that "a strong preference exists for following *the most recent Restatement* over an older version," 55 V.I. at 982 (emphasis added), before proceeding to adopt "sections 1 and 20 of the Third Restatement" as Virgin Islands common law governing "strict liability for injuries resulting from a defective product." *Id.* at 985. Yet, the Court also recognized in the same breath that its own "decisions" — and, after *Connor*, the decisions of the Superior Court judges as well, *see* 60 V.I. at 604 — "constitute 'local law' that may or may not be consistent with the Restatements." *Banks*, 55 V.I. at 984. Thus, a *Banks* analysis would almost always be circular and redundant if the question were simply whether Virgin Islands courts applied a particular restatement rule in the past, whether that restatement rule represents the majority rule now, and finally whether it is sound to still follow the restatement's majority rule. By and large, the restatements do represent the majority rule, notwithstanding concerns courts and scholars expressed regarding the American Law Institute's efforts to reshape, rather than restate, the common law. *Cf. Martinez*, 51 V.I. at 185 n.5; *Manbodh V*, 47 V.I. at 232. To avoid such sort of confusion, this Court will adopt the soundest common law rule, rather than the "soundest" restatement provision.

Understandably, courts have tried to conceptualize indemnification in terms of active versus passive liability, or primary versus secondary or vicarious liability. But those terms are misleading for many reasons. Before an action for indemnification can arise, someone must have been injured and either settled out of court, or sued and then settled, or sued and prevailed at trial. As the number of persons potentially at fault increases, or the number defendants named in a lawsuit increases, the possible outcomes between the injured party and each wrong-doer increases exponentially. In this case, for example, Mr. Willie sued Hess, HOVIC, Litwin, and UOP. Litwin, believing that others may be partially

responsible for Mr. Willie's injuries, sued in turn Shell, IMC, Riggers, and CBIC. Presumably, Mr. Willie could have sued them directly or asserted his claims against them as third-party defendants. He did not. Nonetheless, the jury will have to apportion liability for Mr. Willie's injuries, including the third-party defendants since Litwin brought them into this lawsuit, claiming they should have to contribute if liability is found. If Litwin is correct, Shell may bear some of the responsibility. But if Shell is only found liable because it supplied a product to the refinery, and Shell can then prove that it has a special or legal relationship with Litwin, Litwin may ultimately have to indemnify Shell. This means then, that Litwin could find itself in the same position that it would have been in before it filed a third-party complaint.

To illustrate the concerns that arise when the focus is not on the relationship, but rather on how negligent Shell and Litwin each were, assume, *arguendo*, that Shell lacked sufficient minimum contacts with the Virgin Islands and prevailed on a motion to dismiss for lack of personal jurisdiction. Assume further that Mr. Willie prevailed at trial against Litwin. It would not follow that Shell was not at fault. Shell's portion of the liability (if any) was not before the jury. Yet Litwin was found liable. Under Section 22 of the RESTATEMENT THIRD, "a vicariously liable person can obtain indemnity from the person whose negligence was imputed *only if* the vicariously liable person is not independently liable." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22 rptr. note cmt. e (emphasis added). Consequently, to determine if Litwin was independently liable — rather than passively, secondarily, or vicariously liable, and, notwithstanding, that a jury already found Litwin liable — the factfinder (whether a jury or a judge) in this hypothetical Litwin-Shell lawsuit will have to re-determine Litwin's role in causing Mr. Willie's injuries. That is, the jury or the judge will hear similar (if not the same) evidence and make another determination, but only as between Shell and Litwin. *Cf. id.* rptr note cmt. c ("Some issues . . . may already have been adjudicated in the suit between the plaintiff and the indemnitee, and the indemnitee may be bound. This Section does not address the preclusive effect of issues adjudicated in the earlier suit. That issue is governed by the applicable law of judgments."). The Supreme Court of New Hampshire discussed similar concerns in *Morrissette v. Sears, Roebuck & Co.*, 114 N.H. 384, 322 A.2d 7, 9-10 (1974):

> While a prejudgment payment in settlement does not extinguish a right of indemnity, the third-party plaintiff must show that the settlement

was made under legal compulsion, rather than as a mere volunteer, for indemnity is not available for payment voluntarily made. The parties agree that third-party plaintiff, Morrissette, must make some showing that she settled under a legal compulsion. The conflict surrounds the scope of her burden in this area. Sears argues that she must prove actual liability on her part . . . in effect forcing her to try out the case of the original plaintiff. . . . Morrissette argues that she need only show probable liability. The problem has been considered with varying results. Some courts support Sears' view. . . . Some cases adopt a less precise statement that one voluntarily paying a claim should be required to show that he was legally liable for it. Other cases say that the third-party plaintiff must establish potential liability but need not prove the case against himself. If a third-party plaintiff is not to be discouraged from making a settlement his burden in an action for indemnity must not be too great. He would in effect be forced to proceed to trial against the original plaintiff . . . and would find settlement to little advantage. On the other hand, equitable considerations require that the third-party defendant have a reasonable opportunity to show that the third-party plaintiff was not liable to the original plaintiff but paid the claim as a volunteer (quotation marks, citations, and paragraph breaks omitted).

Even if Litwin did not prevail in this hypothetical separate action against Shell, judicial resources would still have been expended (not to mention costs and attorney's fees) by re-litigating at least some of the facts that would have already been determined in *Estate of Willie v. Hess*. And if Mr. Willie's estate settles with the remaining first-party defendants, rather than proceed to trial, his case would still have to be tried (at least in some sense), if only in the Litwin-Shell indemnification action because the factfinder would have to determine first that Mr. Willie was injured, then that Litwin's actions were not the cause of Mr. Willie's injuries, and further that it was really Shell, just through Litwin (and not some other intervening or contributing factor), who caused Mr. Willie's injuries. Only at that point would Shell would be required to indemnify Litwin. Requiring that Shell file a separate lawsuit against Litwin is unnecessary.

▉ Courts issue decisions in cases, not for the ages, but for the parties. *Cf. Huffman v. Appalachian Power Co.*, 187 W. Va. 1, 415 S.E.2d 145, 157 (1991) (Neely, J., concurring) ("All judges should recognize that we

are not writing for the ages . . . . Our job is simply to tell the world what the law is today."); *In re: Microsoft Corp. Antitrust Litig.*, MDL 1332 Civ. No. 05-1087, 2005 U.S. Dist. LEXIS 11520 (D. Md. June 10, 2005) ("As I have previously done in these MDL proceedings, I am simply following my own adage of 'writing for the parties, not for the ages.' "). However, when a decision is followed consistently over time, and a community grows to depend on it, that decision becomes part of the law common to that community. *Cf. Smith*, 65 V.I. at 189. Departing from such common law should not be done lightly as it leaves the law unsettled and can erode public confidence in the judiciary. *Cf. Matthew v. Herman*, 56 V.I. 674, 680 (2012) ("[W]here a Restatement provision has received widespread acceptance in the Virgin Islands . . . reliance upon and use of the provision [i]s entitled to great respect." (quotation marks and citations omitted)). In this instance, however, neither Section 22 nor *Manbodh III*'s adoption of it has gained widespread acceptance in the Virgin Islands. In fact, it appears that no particular common law rule has gained widespread acceptance by courts applying Virgin Islands law. *Compare Manbodh I*, 2002 V.I. LEXIS 40, at *5-6 (applying restitution restatement), *Continental*, 19 V.I. at 291 (same), and *Guardian Ins. Co. v. Khalil*, 63 V.I. 3, 13 (Super. Ct. 2012) (same), *with Dublin*, 15 V.I. at 225-26 (applying restitution restatement and a tentative draft of the second torts restatement). At most, a slim majority of the cases applied the Restatement (First) of Restitution, including *Manbodh I*.[21]

---

[21] Inconsistencies within the different *Manbodh* decisions somewhat undermine their persuasive value concerning indemnification. *Manbodh I* applied the Restatement (First) of Restitution. *See* 2002 V.I. LEXIS 40, at *5. *Manbodh III* applied the Restatement (Third) of Torts: Apportionment of Liability, but without distinguishing the earlier decision. *See* 47 V.I. at 394. Although the court explained in *Manbodh III* that it believed that conducting "[a] searching inquiry into the governing law" was necessary "because the RESTATEMENTS (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY sections 1 through 26, the RESTATEMENT (SECOND) OF TORTS sections 876 through 886B, and the RESTATEMENT (FIRST) OF RESTITUTION sections 76 through 102 offer different approaches to the apportionment of liability," *id.* at 392, the court did not explain how the Restatement (First) of Restitution no longer represented the majority rule on common law indemnity. Instead, in surveying the law on contribution, the court observed that "[t]he Restatement (First) of Restitution, in particular its prohibition of contribution among joint tortfeasors . . . no longer represents the majority rule." *Id.* (citations omitted). Presumably, the court concluded the same was true of indemnification, namely that the restitution restatement was also outdated. Yet, Section 886B explains that "[t]he basis for indemnity is restitution." RESTATEMENT (SECOND) OF TORTS

91

■ Because contribution concerns the **apportionment** of liability, whereas indemnification concerns the **avoidance** of liability, this Court believes the relationship between the parties should control. The basis of indemnity at common law has never been "the equitable *distribution* of responsibility." *Piehl v. Dalles Gen. Hosp.*, 280 Ore. 613, 571 P.2d 149, 152-53 (1977) (emphasis added). That is contribution. Rather, common law indemnification concerns the "*shifting* of responsibility from the shoulders of one person to another." *Id.* (emphasis added) (quoting William L. Prosser, THE LAW OF TORTS 313 (4th ed. 1971)). Indemnity arises "where an *innocent party* is held vicariously liable for the actions of the *true tortfeasor*." *Pacquette v. Grant*, ST-08-CV-538, 2010 V.I. LEXIS 86, at *2 (Super. Ct. Dec. 10, 2010) (emphasis added) (citations omitted); *accord Skinner v. Reed-Prentice Div. Package Machinery Co.*, 70 Ill. 2d 1, 374 N.E.2d 437, 439, 15 Ill. Dec. 829 (1977) ("There is an important distinction between contribution, which distributes the loss among the tortfeasors by requiring each to pay his proportionate share, and indemnity, which shifts the entire loss from one tort feasor who has been compelled to pay it to the shoulders of another who should bear it instead." (quotation marks and citation omitted)). This distinction has been eclipsed or subsumed by "the goals of comparative responsibility." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22 rptr. note cmt e. For this reason, the Court believes that common law indemnification — in contrast to contribution or even contractual indemnification — should only arise in very limited circumstances. *Cf. Manbodh II*, 47 V.I. at 292 n.44 ("Given that the Plaintiffs brought strict products liability claims against HOVIC and that those claims were settled, an absence of negligence by R & G *will not shield it from liability* in at least a common law indemnification setting, where R & G may be

---

§ 886B cmt c (1979). And Section 22 of the Restatement (Third) does not upend this rule of law.

> The rationale for § 886B(1) was that the indemnitee provided a benefit to the indemnitor, so the indemnitee was entitled to restitution. *See* RESTATEMENT SECOND, TORTS § 886B(1) *and Comment c*. This was true only if the indemnitee provided the indemnitor with protection from liability. *That rationale has not been affected by comparative responsibility*. It would still be unfair under the basic principles of restitution to make a person pay noncontractual indemnity while he was still liable to the plaintiff.

RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22 cmt b (2000) (emphasis added).

liable notwithstanding any absence of negligence." (emphasis added)); *accord* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22(a)(2) (indemnity available for vicarious liability or liability based on supplying a product). "Indemnification is a common law remedy, relief of which stems from the relationship of the parties." *Manbodh I*, 2002 V.I. LEXIS 40, at *5.

 All of the special or legal relationships that could be recognized under Virgin Islands law is not for this Court to determine here.[22] However, one relationship that has been recognized under Virgin Islands law for common law indemnification purposes is the manufacturer-supplier relationship. *Manbodh II* rejected R & G's claim that the Superior Court lacked personal jurisdiction over it because, according to HOVIC's allegations, R & G "supplied assorted asbestos-containing products to the HOVIC refinery." 47 V.I. at 281. Although the court did not refer, expressly, to upstream liability, that was, in part, the basis of the court's observation that, "an absence of negligence by R & G will not shield it from liability in at least a common law indemnification setting, where R & G may be liable notwithstanding any absence of negligence" because "the Plaintiffs brought strict products liability claims against HOVIC and those claims were settled." *Id.* at 292 n.44.

> Indemnity claims stemming from products liability actions can be divided into "upstream" and "downstream" claims. "Upstream" indemnity refers to shifting liability to a manufacturer or previous user of the product, while indemnity "downstream" is a shift to a subsequent user or handler. Classic "upstream" claims would be those of a dealer held strictly liable who sought to recover all his liability from the manufacturer of the product, or an assembler who sought to lay the blame on the producer of a component part. "Downstream" is, of course, the reverse, e.g., a manufacturer shifting liability to a dealer or subsequent

---

[22] *Cf. Van Slambrouck v. Economy Baler Co.*, 105 Ill. 2d 462, 475 N.E.2d 867, 870-71, 86 Ill. Dec. 488 (1985) ("Classic pretort relationships which have given rise to a duty to indemnify include: lessor and lessee; employer and employee; owner and his lessee; master and servant." (citations omitted)); *accord Howard Univ.*, 608 A.2d at 123 ("Common examples include: a car owner, liable to a third party for injuries caused by his or her car, who seeks indemnification against the driver of the car who negligently caused the third party's injuries; an employer, liable to a third party for injuries caused by his or her employee, who seeks indemnification against the employee whose negligence caused the harm." (citing *Nat'l Health Labs, Inc. v. Ahmadi*, 596 A.2d 555, 557-58 (D.C. 1991)).

user. Because strict liability is based in part on the policy goal of distributing the economic burden of injuries to the party who has profited the most from the product and therefore can best bear the burden, shifting all the liability "upstream" through indemnity has generally been more favored than efforts to shift it all "downstream."

*De Anda v. Midland-Ross Corp.*, 644 F. Supp. 263, 265 (N.D. Ill. 1986) (citations and paragraph break omitted).

Here, the manufacturer (Shell) is seeking indemnification from a purchaser or supplier (Litwin) of its products. Virgin Islands courts have not addressed whether common law indemnification should be recognized downstream. A few courts have.[23] *See generally* Howard J. Alperin, *Products Liability: Right of Manufacturer or Seller to Contribution or Indemnity from User of Product Causing Injury or Damage to Third Person, and Vice Versa*, 28 A.L.R.3d 943, 981-83 (1969) (collecting cases "where a manufacturer of a product causing injury or damage to a third person . . . was entitled to maintain a third-party action for indemnity *against the user*." (emphasis added)). Understandably, however, courts have been reluctant to shift liability downstream. But courts have at least allowed the manufacturer to assert a claim for indemnification against the user or supplier, even other manufacturer may not be able to prove,

---

[23] Courts have also recognized that purchasers may have to duty to

> give notice of an alleged breach of an implied warranty to his seller within a reasonable time after he discovers, or should have discovered, the breach lest his claim be barred from any remedy. The notice requirement serves to provide a seller an opportunity to cure a defect and minimize damages, protect his ability to investigate a breach and gather evidence, and to encourage negotiation and settlement. In the context of an action involving personal injury, it also informs the seller of a need to make changes in its product to avoid future injuries.

*Maldonado v. Creative Working Concepts*, 296 Ill. App. 3d 935, 694 N.E.2d 1021, 1026, 230 Ill. Dec. 743 (1998) (citations omitted); *accord* 11A V.I.C. § 2-607(5). *See also Baggott v. Piper Aircraft Corp.*, 101 F. Supp. 2d 556, 561 (S.D. Ohio 1998) (discussing voucher at common law in the context of the sale of goods as codified in the Uniform Commercial Code); *accord* 11A V.I.C. § 2-607(6). Although the parties have not cited or addressed whether section 2-607(6) of title 11A of the Virgin Islands Code could govern, the Court notes that it may be a source of some of the parties' indemnification claims in these kinds of case. However, the Court declines to address the issue, "particularly without the benefit of briefing from the parties," *Ernest*, 64 V.I. at 636 n.7 (citation omitted), because no Virgin Islands precedent considered whether the Uniform Commercial Code governs common law indemnification claims between manufacturers and purchasers like Shell and Litwin.

ultimately, that the supplier or purchaser should be required to indemnify the manufacturer. *See, e.g., Roy v. Star Chopper Co.*, 442 F. Supp. 1010, 1018-20 (D.R.I. 1977) ("The implied obligation to indemnify must rest on a particular duty the employer who has purchased the machine owes to the manufacturer, distinct from the duty he owes to his employees. Clearly, the mere fact of a contractual relationship between the would-be indemnitee and indemnitor does not necessarily give rise to an implied obligation to indemnify. For example, courts have refused to regard the vendor/vendee relationship, without more, as giving rise to a contract to indemnify. These courts are particularly reticent to recognize downstream indemnity because it amounts to reversing the strict products liability imposed on a manufacturer for injuries to all users of the product. . . . In light of these courts' well-founded hesitation to recognize indemnity claims by a manufacturer against an employer/purchaser, *this Court approaches Star Chopper's claim for indemnity with great reservation.* Nonetheless, we are persuaded that *the evidence* produced by Star Chopper, *if true*, posits a relationship between Star Chopper and AMS sufficiently different from the manufacturer/purchaser relationships involved in the cases discussed *ante*. . . . The evidence in this case, if believed, provides the basis for finding an implied contract to indemnify." (emphasis added) (quotation marks, citations, and paragraph breaks omitted)); *Goldstein v. Compudyne Corp.*, 45 F.R.D. 467, 469 (S.D.N.Y. 1968) (granting motion for leave to file third-party complaint for, inter alia, indemnification against plaintiff's employer) ("Compudyne may be able to establish at trial that it was not actively negligent. It may show, for example, that although the machine was defectively made, Aerotest knew of the defect, disregarded it, and used the machine despite the known defect. New York substantive law would allow defendant Compudyne to recover over against Aerotest on these facts." (citation omitted)); *cf. SW (Del.), Inc. v. Am. Consumers Indus., Inc.*, 450 A.2d 887, 889 (Del. 1982) (affirming grant of summary judgment against indemnification) ("[T]here is no evidence to permit a rational trier of fact to reasonably find a 'special relationship' to have arisen between SW [the manufacturer] and ACI [the purchaser] relating to the design and manufacture of the ice-cubing machine from which an obligation of ACI to indemnify SW from a third-party claim might arise. *Without such additional evidence*, the fact that ACI and SW '. . . entered into a sales contract is not sufficient to establish that type of relationship from which an implied obligation to

95

indemnify the third party may arise.' " (quoting *Arcell v. Ashland Chem. Co.*, 152 N.J. Super. 471, 378 A.2d 53, 63 (1977)). *See also Myco, Inc. v. Super Concrete Co.*, 565 A.2d 293, 300 (D.C. 1989) ("[A]gree[ing] with the authorities that conclude the imposition of such a duty would stand indemnity on its head," "[a]bsent a much closer relationship than that which exists between the parties here," and acknowledging in a footnote that "[a] different question may be presented, possibly, *after the evidence is adduced*, if this case goes to trial." (emphasis added) (quotation marks and citations omitted)).

While indemnification may not be "obtainable in strict liability cases as against the user" and "cannot be the basis, in strict liability actions, for a third party complaint seeking to shift liability." *Kuziw v. Lake Engineering Co.*, 398 F. Supp. 961, 963 (N.D. Ill. 1975) (citations omitted), Mr. Willie did not assert a claim for strict product liability. He asserted "negligence, gross negligence, recklessness, and intentionally wrongful acts" as one count, "supplying a chattel dangerous for its intended use" as another count, "fraudulent concealment" as a third count, and a demand for punitive damages, which is not a cause of action. (Compl. ¶¶ 17-31.) *Accord Abednego v. St. Croix Alumina, LLC*, 63 V.I. 153, 185 (Super. Ct. 2015) ("[P]unitive damages . . . is not a stand-alone claim." (citing *Der Weer v. Hess Oil V.I. Corp.*, 60 V.I. 91, 95 n.1 (Super. Ct. 2014)).

### SET-OFF AT COMMON LAW

The last area to address is set off. In its motion, Litwin contends that "local caselaw [sic] has not fleshed out" the law regarding set-off and Superior Court Rule 34 "does not define the cause of action." (Mot. 5.) Quoting a historical treatise, Litwin suggests that Virgin Islands law should hold that a " '[s]et-off signifies the subtraction or taking away of one demand from another opposite or cross demand, so as to distinguish the smaller demand and reduce the greater by the amount of the less; or, if the opposite demands are equal, to extinguish both.' " *Id.* (quoting Thomas W. Waterman, *A Treatise on the Law of Set-Off, Recoupment, and Counter Claim* 1 (2d ed. 1872)). Consequently, if "set-off is defined as a defendant's counter-demand against the plaintiff, arising out of a transaction independent of the plaintiff's claim . . . . [i]nherent, then, in such a cause of action is the existence of the debt which is due to the counter-claimant from some other transaction between the parties." *Id.*

96

(quotation marks, brackets, and citation omitted). The Supreme Court of the Virgin Islands has not yet addressed whether set-off should be recognized in the Virgin Islands, so the Court must conduct a *Banks* analysis to determine the soundest rule.

### 1. VIRGIN ISLANDS PRECEDENT ON SET-OFF

One of the earliest reported decisions in the Virgin Islands concerned set-off. *See Stafford v. Palidore*, 1 V.I. 134 (D.V.I. 1928). Mary L. Stafford sued Cathrine Palidore and obtained a judgment against her on May 31, 1927 for $1,847.64. *See id.* at 135. The opinion did not identify the subject of the lawsuit, but Stafford later executed on the judgment and only recovered $352.02, leaving a balance of $1495.62. *Id.* Cathrine Palidore owned property in Frederiksted that she conveyed Rosa Palidore, subject to a life estate in herself. *Id.* When Mary learned about the conveyance, she filed another lawsuit against Cathrine, and sued Rosa as well. *Id.* Mary alleged that the "conveyance . . . was with intent to hinder and defraud . . . [her] in the collection of said judgment claim." *Id.* The jury found in favor of Cathrine and Rosa and the court assessed costs (including attorney's fees) of $99.80 against Mary. *Id.* at 135-36. Mary asked the court to set the two judgments off or, in other words, reduce the remaining amount that Cathrine owed her from the first action by the amount Mary owed Cathrine from the second action. The issue, however, was that the law in St. Croix[24] at the time gave attorneys a lien on judgments awarded to their clients for their fees. Cathrine's attorney was awarded $75.00 as his fee, which would have reduced the amount Mary could have set-off to just $24.80. After balancing the attorney's statutory right against the "very substantial right existing between the parties" "to a set-off," the court concluded that the St. Croix ordinance "protected" the

---

[24] Both St. Croix and St. Thomas/St. John were governed by separate councils (Colonial Councils until approximately 1936 and Municipal Councils until approximately 1955) until the two municipalities were merged into a unicameral legislature that governed the entire Territory following the 1954 amendments to the Organic Act for the Virgin Islands. The ordinance at issue in *Stafford* was passed on December 24, 1918 by the Colonial Council of St. Croix. Even though the annotations in the Virgin Islands Code purportedly show that the December 24, 1918 Ordinance was carried forward into what later became Section 441 of Title 4 of the Virgin Islands Code, none of the editions of the code available in the Superior Court on St. Croix at present refer to Section 441 providing attorneys authority to impose a lien on their clients' judgments. Thus, the ordinance had to have been repealed. *Cf.* 1 V.I.C. § 5.

right to set-off, which was superior to the attorney's lien. *Id.* at 140. The court allowed "the set-off . . . against the portion of the charges due Cathrine," but not the amount due to Rosa. *Id.* "[J]udgment could only be set off against the person on whom it rests," the court reasoned, and "should not be allowed to interfere with the rights of the party not affected by it." *Id.*

Set-off next appeared in a 1951 decision issued by the District Court. *See Stoner v. Bellows*, 2 V.I. 172 (D.V.I. 1951). In issuing judgment from the bench (later transcribed and reported), the court accepted a request from the plaintiff's attorney to include in the judgment an amount the parties had incurred printing stationery and other materials for their business. *Id.* at 186. The Stoners and the Bellows had gone into business together as friends, but "without the formalities necessary for such a transaction, and after they got together, they found that they were temperamentally unsuited to each other, and almost immediately recriminations started to arise on both sides." *Id.* at 175. In resolving the dispute, the court ruled in favor of the Stoners and accepted their attorney's request to include in the judgment the printing costs the Stoners incurred. But the court, on its own, decided to offset the amount by half. *See id.* at 186 ("I will allow the plaintiffs as a setoff against the figures which I have just mentioned, to wit: half of $630.00 or $315.00.").

Scattered references to set-off reoccur throughout a few later cases. *See, e.g., Gilbert v. Gibbs*, 7 V.I. 375, 384 (Mun. Ct. 1969) ("[T]the laws of set-off, counterclaim and recoupment relate to the remedy and not to the right, and therefore are governed by the law of the place where the action is brought and not by the *lex loci contractus.*"); *Red Hook Marina Corp. v. Antilles Yachting Corp.*, 9 V.I. 236, 238 (D.V.I. 1971) ("Under proper circumstances, a counterclaim may be treated as the defense of set off."), *aff'd* 478 F.2d 1273, 10 V.I. 598 (3d Cir. 598); *In re: Hutchins Const. Co. v. Bell*, 396 F. Supp. 1262, 12 V.I. 122, 124-25 (D.V.I. 1975) (set-off raised in arbitration) ("The decision to disallow the owner's claim for a set-off was amply justified in the report. The arbitrators found that whatever sums to which the owner may have been entitled by set-off could not be determined, due to the owner's summary stopping of the construction."); *Cintron v. Islands Cars, Inc.*, Civ. No. 386/82, 1984 V.I. LEXIS 35, at *6-7 (Terr. Ct. July 16, 1984) ("The defendant further contends that he is entitled to an offset award of damages for the plaintiff's continued use of the vehicle after his revocation of acceptance.

Even though there is no specific provision in the Uniform Commercial Code for an offset award for continued use by a buyer, the general rule is that where a buyer is entitled to rescind the sale and elects to do so the buyer shall thereafter be deemed to hold the goods as a bailee for the sale. Moreover, this reasoning is consistent with the principles of law and equity which the UCC provides shall supplement its provisions." (internal citation omitted) (citing 11A V.I.C. § 1-103)). Set-off also comes up frequently in landlord-tenant actions. *See, e.g., James v. Bailey,* 370 F. Supp. 469, 10 V.I. 382, 386 n.5 (D.V.I. 1974) (on appeal from the Municipal Court) ("In most jurisdictions, compensation for the value of improvements is achieved by permitting a setoff against the amount recoverable by the owner in actions for rents, profits and damages as well." (citations omitted)); *V.I. Hous. Auth. v. Joseph,* 13 V.I. 508, 516 n.3 (Terr. Ct. 1977) ("Several options, without withholding rent, are available to tenants. Defendant may have elected to make the repairs herself and then set off the cost of repairs against her rental obligation."); *Sperber v. Ingvoldstad,* Civ. No. 83-55, 1984 U.S. Dist. LEXIS 25124, at *5 (D.V.I. Apr. 11, 1984) ("28 V.I.C. § 781 *et seq.* (1975) permits a determination in the same summary action of any money due a party for rent. Implicit in that right, it seems to us, is the desire to consider in the same action any counterclaim which functions as an offset to a claim of money due."). The only case where set-off was discussed in any depth recently was in *Yahn v. Blackman,* 17 V.I. 207 (Terr. Ct. 1981). There, the court declined to allow the amount awarded to the landlord in an eviction case to be set-off by the tenant, because the tenant failed to submit proof in support of the amount she requested. *Id.* at 209-10.

In recent years, courts applying Virgin Islands law have not discussed set-off in any depth. Litigants have continued to request or demand set-off and courts have continued to offset the amounts awarded. *Cf. Mathes v. Century Alumina Co., LLLP,* Civ. No. 05-0062, 2009 U.S. Dist. LEXIS 52135, at *11 (D.V.I. June 19, 2009) ("[T]he Alumina Defendants seek contribution and set-off for environmental damage caused by the release of 'leachate' from a government-operated landfill situated adjacent to the Alumina Refinery."); *Bank of Nova Scotia v. Herman,* ST-10-CV-270, 2016 V.I. LEXIS 65, at *16-17 (Super. Ct. May 13, 2016) ("[T]he Court finds that Plaintiff has failed to disprove that Ann Herman paid $135,801.91 in mortgage payments between 2000 and 2006, as she

asserts. Accordingly, Ann Herman is entitled to a set off of $135,801.91 from $214,640.02, the outstanding debt as of September 5, 2000.").

As set-off has been recognized for almost a century in the Virgin Islands, this factor has significant weight.

### 2. POSITION OF OTHER JURISDICTIONS ON SETOFF

Historically, many courts held that set-off was not available in actions at law, only in suits in equity, unless otherwise permitted by statute. *See, e.g., Copperthite Pie Corp. v. Whitehurst*, 157 Va. 480, 162 S.E. 189, 189 (1932) ("Set-off . . . while unknown to the common law, was recognized in equity from early times. The mere existence of mutual demands, distinct and independent in their nature, was no ground for equity jurisdiction, but once the parties were in that forum, equity, without the aid of the statute dealing with set-offs, would settle all conflicting claims between the parties." (internal citation omitted)); *Sav. Bank of New London v. Santaniello*, 130 Conn. 206, 33 A.2d 126, 128-29 (1943) ("Set-off was unknown to the common law. It was, however, early recognized in equity, which exercised its broad powers to prevent circuity of action." (citations omitted)); *Erickson v. Volcano Stables & Transp. Co.*, 13 Haw. 428, 430 (1901) ("Set-off and counter claim are purely statutory defenses while recoupment is a common law defense."). *But see Tribble v. Taul*, 23 Ky. 455, 460 (1828) (Bibb, C.J., dissenting) ("There are three cases of set-off; at common law, by statute, and in equity."). But once the action at common law and the lawsuits in equity were merged into one form of civil action, the limitations on the types of cases in which set-off could be demanded began to disappear too. *Cf. Mark VII Fin. Consultants Corp. v. Smedley*, 792 P.2d 130, 132-33 (Utah Ct. App. 1990) ("The distinction between recoupment and setoff has largely been abandoned by the counterclaim, which essentially encompasses both recoupment and setoff. . . . Since the Utah Rules of Civil Procedure were modeled after the federal rules, we conclude that the distinctions between recoupment, setoff, and counterclaim have likewise been dissolved in Utah." (quotation marks, citations, and paragraph breaks omitted)).

Nonetheless, in many instances, it was in fact legislatures — state and territorial, including the Virgin Islands — that allowed set-off. *See* Code of Laws for Mun. of St. Thomas & St. Jan [sic], tit. III, ch. 86, § 3 (1921) ("A party whom a judgment is giving in a Police court may, upon three days' notice to the adverse party, apply to the Judge of such court to have

another judgment given in the Police court, between the same parties and against such adverse party, set-off against such first mentioned judgment."), *repealed by* 1 V.I.C. § 5; *cf.* Conn. Gen. Stat. § 52-139 (set-off of mutual debts authorized); Ala. Code § 6-8-80 ("Judgments may be set off against each other by a district or circuit court on motion."); Miss. Code Ann. § 11-9-125. *But cf. Gouty v. Schnepel*, 795 So. 2d 959 (Fla. 2001) (Florida's set-off statutes unavailable in light of statutory modifications to the doctrine of joint and several liability). *See also Kruger*, 521 P.2d at 447 (1974) ("The right of setoff, while recognized by the statute, was not created by it. The right is grounded in general principals of equity. In equity, a setoff depends, not upon the Statutes of Set-off, but upon the equitable jurisdiction of the Court over its suitors." (quotation marks, ellipsis, and citation omitted)).

Where the right to demand set-off was left to the courts, the majority held that the right may be asserted in all cases. *Accord Walker v. Farmers Ins. Exch.*, 226 Mich. App. 75, 572 N.W.2d 17, 19 (1997) ("Setoff is a *legal or equitable remedy* that may occur when two entities that owe money to each other apply their mutual debts against each other. In general, absent a statutory mandate authorizing a setoff in a particular circumstance, setoff is a matter in equity." (emphasis added) (citations omitted)); *Jordet v. Jordet*, 2012 ND 231, 823 N.W.2d 512, 516 (2012) ("Setoff requires mutuality of the parties, such that debts and credits are mutual when they are due to and from same person in same capacity. The equitable remedy of setoff will be exercised to promote substantial justice and rests largely in the sound discretion of the court." (quotation marks and citations omitted)); *Bichler v. DEI Sys., Inc.*, 2009 UT 63, 220 P.3d 1203, 1207 (2009) ("The doctrine of setoff is essentially an equitable one requiring that the demands of mutually indebted parties be set off against each other and that only the balance be recovered in a judicial proceeding by one party against another. The right to set-off exists independently of statute and rests upon the inherent power of a court to do justice to the parties before it. It is an equitable right founded on equitable principles." (quotation marks and citations omitted)).

██ However, set-off is not a cause of action *per se*, but rather a defense or a cross-demand that cannot arise from the same issues being litigated in the case at bar. *See, e.g., M.N.C. Corp. v. Mt. Lebanon Med. Ctr., Inc.*, 510 Pa. 490, 509 A.2d 1256, 1259 (1986) ("A set-off is a 'counter-claim *demand* which defendant holds against plaintiff, arising

101

out of a transaction *extrinsic* of plaintiff's cause of action.' " (emphasis added) (quoting *Black's Law Dictionary* 1230 (rev. 5th ed. 1979))); *accord Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 508 (D.C. 1994) ("A counterclaim for set-off is a *counter demand* which defendant holds against plaintiff, arising out of a transaction *extrinsic* of plaintiff's cause of action. . . . A set-off is an equitable defense which can reduce or defeat the opposing party's claim. Although unknown at common law, it was recognized early on in equity. Since the nature of a set-off is equitable generally, its application after a determination of the claim and counterclaim are appropriately for the court rather than the jury." (emphasis added) (quotation marks and internal citations omitted)). *But see McKinney v. Pure Oil Co.*, 129 Ind. App. 223, 154 N.E.2d 53, 56 (1958) ("[A] set-off is not a defense to an action, but a cross-action."). *Cf. Merchants Heat & Light Co. v. J.B. Clow & Sons*, 204 U.S. 286, 289-90, 27 S. Ct. 285, 51 L. Ed. 488 (1907) (explaining that at common law a claim by a defendant relating to the same transaction that gave rise to the plaintiff's action was not asserted as a counterclaim for set-off or as an affirmative defense, but rather as cross-demand for recoupment) ("[B]y setting up its counterclaim the defendant became a plaintiff in its turn . . . . It is true that the counterclaim seems to have arisen wholly out of *the same transaction* that the plaintiff sued upon, and so to have been in recoupment rather than in set-off proper. But even at common law, since the doctrine has been developed, a demand in recoupment is recognized as a cross demand as distinguished from a defense.").[25]

---

[25] Recoupment and set-off differ in that recoupment permits the opposing party (typically a defendant against the plaintiff) to assert a claim if it arose out of the same transaction at issue in the plaintiff's case, while set-off requires that the two transactions be unrelated. *See, e.g., Pacific Concrete Fed. Credit Union v. Kauanoe*, 62 Haw. 334, 614 P.2d 936, 939 (1980) ("The term recoupment developed under principles of common law and described a claim that defendant could assert against plaintiff only if it arose from the same transaction as plaintiff's claim. It is in the nature of a defense and can only be asserted to reduce, diminish or defeat the plaintiff's claims. A unique characteristic of common law recoupment is that it permits the defendant to raise a claim without regard to the statute of limitations which would apply if the defendant brought an affirmative action on the same claim. Hawaii has recognized recoupment in a number of cases [but] distinguished it from set-off which arises out of a separate transaction, unrelated to plaintiff's claim." (quotation marks, citations, and paragraph break omitted)); *accord Matthes v. Century Aluminum Co., LLLP*, Civ. No. 05-0062, 2009 U.S. Dist. LEXIS 52135, at *19-22 (D.V.I. June 19, 2009) (court noted that defendants

That many jurisdictions recognize set-off, though some by statute, is persuasive here.

### 3. SOUNDEST RULE FOR THE VIRGIN ISLANDS

 Litwin is correct, that Virgin Islands courts have not "fleshed out" the extent of Superior Court Rule 34 or "define[d] the cause of action for set-off." (Mot. 5.) But Litwin is not correct to the extent it contends that the rule creates a right of set-off. Rule 34 governs the procedure by which a defendant (or, as here, a third-party defendant) can demand or request a set-off in its answer. A rule of procedure cannot create a substantive right.

But the right of set-off has been recognized for nearly a century in the Virgin Islands, first by statute for claims under $200.00. *See Banks,* 55 V.I. at 978 n.6 ("When the 1921 Codes were in effect, the local judiciary consisted of three Police Courts, which were not courts of record and only possessed concurrent jurisdiction with the District Court over civil claims not exceeding $200.00." (citation omitted)). The Legislature later repealed the 1921 set-off statutes, sometime before the 1957 code was enacted, possibly "[w]hen the Legislature replaced the Police Courts with the Municipal Court — a court of record which served as the predecessor to the Superior Court." *Id.* (citation omitted). Around the same time, the District Court, at the time when it possessed rule-making authority for local courts in the Virgin Islands, promulgated Municipal Court Rule 34. Municipal Rule 34 became Territorial Court Rule 34 in 1981.[26] Territorial Court Rule 34 became Superior Court Rule 34 in 2005.[27] Other than its title, Rule 34 has not changed in over sixty years. *Cf. Rohn v. People,* 57 V.I. 637, 645 (2012) (noting that another rule of the Superior Court "has its origins in the Rules of the Municipal Court,

---

had counterclaimed for "common law setoff" but then addressed counterclaims under recoupment because they "arise out of the same transaction or occurrence as plaintiffs' claims and seek relief of the same kind and nature.").

[26] *See* V.I. CODE ANN., Tit. 5 App'x IV, p. 261 (1982 ed.) (historical note) ("An Order of the District Court of the Virgin Islands, dated April 27, 1981, provide[d] ... All references to the Municipal Courts in the title, captions or text of the Rules Governing the Municipal Courts shall be changed to read the Territorial Courts." (quotation marks and brackets omitted)).

[27] *See In re: Order Amend. Rules of Terr. Ct. of the V.I.,* Misc. No. 30/2005, 2005 V.I. LEXIS 34, at *1 (Super. Ct. Mar. 3, 2005) (changing "Territorial" to "Superior"). Despite the changes in its name, Rule 34 has been in effect since 1956.

initially adopted by the District Court of the Virgin Islands on December 18, 1956." (citing *Homer v. Lorillard*, 6 V.I. 558, 568 (Mun. Ct. 1967)).

 That set-off was initially permitted in our courts by statute, not precedent, is cause for concern. But "the repeal of a rule which modifies the common law operates to reinstate the common law rule, absent contrary legislative intent." *Taylor v. State*, 969 So. 2d 583, 584 (Fla. Ct. App. 2007) (citations omitted); *accord Lau v. Nelson*, 89 Wn.2d 772, 575 P.2d 719, 721-22 (1978) ("[T]he legislature, by repealing the statute governing the question, returned the matter to the courts of this state."). When statutes are silent, courts "turn to the common law." *Smith*, 65 V.I. at 191 (citing *Carlos Warehouse v. Thomas*, 64 V.I. 173, 183 (Super. Ct. App. Div. 2016)). The Superior Court of the Virgin Islands has "concurrent authority" with the Supreme Court of the Virgin Islands "to shape Virgin Islands common law." *Connor*, 60 V.I. at 604 (citation omitted)). Pursuant to that authority, this Court concludes that the soundest rule is to continue to recognize set-off under Virgin Islands law and allow parties to offset mutual debts or money judgments between them. *Stafford* shows that the District Court, when it served as the court of general jurisdiction, recognized the right of set-off in the Virgin Islands even before the 1921 Codes were enacted.[28] *Gilbert, James, Yahn*, and *Cintron* all show that, even though the 1921 statutes had been repealed, courts continued to offset mutual debts between the parties.

Continuing to recognize this right is proper. Allowing set-offs can reduce costs, fees, and judicial resources, rather than requiring parties to enforce multiple judgments. Allowing a judgment entered in one case to be offset and satisfied by a judgment entered in another case, so long as the debt is between the same parties, is sound. *Cf. Anepac, Ltd. v. Barge "Great Sound" Official No. 356237*, 12 V.I. 128, 139-40 (D.V.I. 1975) (rejecting set-off demand because the parties were not the same). *But cf.* 20 AM. JUR. 2D *Counterclaim, Recoupment, and Setoff* § 52 ("Courts do

---

[28] In fact, the first reported case in the Virgin Islands, *Jorgensen v. Clen*, 1 V.I. 1 (D.V.I. 1918), *aff'd in part and rev'd in part*, 265 F. 120, 1 V.I. 497 (3d Cir. 1920) (per curiam), also involved mutual debts between the plaintiff and the defendant, though only the headnotes of the case mentions the word "set-off." *See* 1 V.I. at 1-2. The entire opinion is devoted to crediting and discrediting amounts the parties claimed they owed to each other. Unlike *Stafford*, however, the debts at issue in *Jorgensen* appear to have arisen from the same transaction, the lease of land in St. John by Jorgensen to Clen, which could have involved recoupment more so than set-off.

have equitable authority, however, to recognize cross-claims between litigants lacking mutuality and to set off one against the other whenever it becomes necessary for a clear equity or to prevent irremediable injustice.").

## DISCUSSION

Litwin argues that Shell has no contribution or indemnity claim against Litwin. (*See* Mot. 5, 7.) According to Litwin, before it could be required to indemnify Shell, "Shell [must] be found liable to Terence Willie." *Id.* at 6. But that "cannot happen since Terrence Willie hasn't sued Shell." *Id.*

> Whatever happens at trial in this case, in no universe will there be a verdict for the Plaintiff against Shell because the Plaintiff did not sue Shell. It makes no difference whether the indemnification is based in contract or in the common law. No liability to Plaintiff — no possibility of indemnification. Shell has failed to assert a cogent case for indemnification.

*Id.* Litwin's argument "is the same for contribution as it is for indemnity." *Id.* at 7. "Both causes of action can only exist where two parties either are or may be liable for the same harm." *Id.* Litwin acknowledges that "there may be a finding based upon Litwin's third-party complaint that Shell harmed Terence Willie, [but] the liability there is to Litwin — not to the Plaintiff." *Id.*

Lastly, Litwin also rejects Shell's demand for set-off.

> Set-off requires the existence of some independent debt — something which Litwin owes to Shell outside of the Terence Willie claim. If Litwin does owe anything to Shell, Shell has failed to plead what exactly that debt is or where it comes from. . . . *Twombly* and *Iqbal*, as adopted by the Virgin Islands Supreme Court, require that a pleading provide requisite specificity as to its grounds. Shell must identify the debt which is the cause of the claimed set-off and they [sic] have not.

*Id.* at 7-8.

Shell, in turn, rejects each of Litwin's arguments. "Litwin and Mr. Willie['s estate] have either reached a settlement . . . or are in the process of reaching a settlement." (Opp'n 4.) Thus, "Shell is entitled to a set-off should Litwin continue to pursue third party claims against Shell.

Litwin . . . cannot have it both ways." *Id.* Concerning contribution and indemnity, Shell posits that

> [i]f this matter went to trial on Mr. Willie's first party claims against Litwin, Litwin could argue that Shell's products caused Mr. Willie's injuries. In turn, a jury could find that several alleged "empty chair" tortfeasors, including Shell are proximately or actually liable for all or part of Mr. Willie's alleged injuries. This is precisely the circumstance that supports a counter claim for contribution and indemnity. Without such a counterclaim, Shell does not have an adequate procedural mechanism to seek an apportionment of damages, or to mitigate damages against Litwin's third-party Complaint.

*Id.* at 4 (citing *James v. Antilles Gas Corp.*, 43 V.I. 37, 47 (Terr. Ct. 2000)). In a final, parting shot, Shell argues that, since "Litwin has apparently conceded that . . . Shell's not liable for any of Mr. Willie's alleged injuries . . . . then both Litwin's third party Complaint and Shell's Counterclaim must be dismissed with prejudice." *Id.* at 4-5.

### 1. CONTRIBUTION

█ The soundest rule for the Virgin Islands is to continue to recognize a claim for common law contribution. Common law contribution may be asserted (1) by a party in a tort or personal injury action, (2) against a co-party or a nonparty, (3) if the co-party or nonparty is or may be liable (4) for the same injury or damages as the plaintiff has sued for. A claim for common law contribution need not have matured before it can be asserted as a counterclaim (including cross-claims, *see* SUPER. CT. R. 34) or by third-party complaint. However, contribution cannot be asserted by a third-party defendant against a third-party plaintiff, if the first-party plaintiff has not also asserted his own claims against that third-party defendant.

Litwin is correct in that, Shell and Litwin are not co-parties here insofar as any judgment entered in favor of Mr. Willie and against Shell. Mr. Willie alleges that Litwin (as well as Hess, HOVIC, and UOP) collectively caused him harm by causing him to be exposed to asbestos and other toxic substances. By filing a third-party complaint, Litwin, in essence, said that others may be at fault too, namely Shell, CBIC, IMC, and Riggers. Litwin brought these nonparties into this litigation on a

106

claim for contribution. It is superfluous for Shell, in turn, to have counterclaimed against Litwin for the same relief, contribution.

Shell's portion of liability, if any, like all of the other parties' liability — including Mr. Willie's own liability, if any (*see, e.g.*, Litwin's Ans. 8, ¶ 28 (asserting contribution negligence as an affirmative defense)) — will be apportioned by the jury. Assuming, *arguendo*, that the jury were to find Hess, HOVIC, and Shell each to be twenty percent at fault, Litwin and UOP ten percent at fault, and IMC, Riggers, CBIC, and Mr. Willie five percent at fault — Litwin's portion of the liability would be forty-five percent because Mr. Willie did not assert his claims against any of the third-party defendants. In other words, Shell's twenty percent as well as the fifteen percent apportioned collectively against CBIC, Riggers, and IMC — again, speaking hypothetically — would have to be paid to Litwin, to be paid in turn to Mr. Willie. But if Litwin had not brought the third-party defendants into this action, Litwin's own liability might have been apportioned at forty-five percent.

Liability in the Virgin Islands is joint and several among multiple defendants, including third-party defendants. *See* 5 V.I.C. § 1451(d). Further assuming, *arguendo*, that Litwin, as third-party plaintiff, were to recover one-hundred percent of the third-party defendants' collective liability from Shell, Shell in turn would have a claim for contribution from the other third-party defendants. And if Shell had asserted a cross-claim against IMC, Riggers, and CBIC, it might be able to recover on that cross-claim. But Shell did not assert any claims against its third-party co-defendants. In fact, none of the third-party defendants asserted claims against each other. Instead, they all counterclaimed against Litwin for the same relief that Litwin asserted against them: contribution and indemnification. Since Mr. Willie did not assert his own claims against any third-party defendant, "the liability there is to Litwin — not to the Plaintiff." (Mot. 7.) If Mr. Willie had asserted his claims against Shell, then Shell's counterclaim for contribution from Litwin may have been viable. But here, both parties cannot obtain contribution from each other. Accordingly, the Court finds that Shell's counterclaim for contribution against Litwin fails as a matter of law. Judgment of dismissal must be entered in favor of Litwin and against Shell on Shell's counterclaim for contribution.

107

## 2. INDEMNIFICATION

■ The soundest rule for the Virgin Islands is to continue recognizing a claim for common law indemnification. As with contribution, courts in the Virgin Islands have allowed common law indemnification claims to be asserted in the same action through a third-party complaint and in a separate or subsequent action. However, because no particular rule has come to be relied on by courts applying Virgin Islands common law — and because the approaches taken by other jurisdictions across the country vary — this Court believes that the better approach is not to adopt a section of the restatements. *Cf. Antilles School*, 64 V.I. at 409 n.1. Instead, the better approach is to simply state the rule for this jurisdiction.

■ Common law indemnification concerns the avoidance of liability. That is, all (not a portion) of one's liability for harming or injuring another is passed on to a third person. Equity and fairness demand that equitable or common law indemnification be limited to a legal or special relationship between the person seeking indemnification (indemnitee) and the person who would be required to indemnify the other (indemnitor). To state a claim for common law indemnification, the indemnitee must allege that (1) it has been or may be sued (2) for damages, (3) proximately caused by the indemnitor's actions or inactions, and (4) but for the relationship between the indemnitee and the indemnitor, the indemnitee would not have been sued or found liable.

■ When ruling on a motion for judgment on the pleadings, like a motion to dismiss for failure to state a claim, the court must assume the truth of all well-pleaded allegations. *See Rennie*, 62 V.I. at 536. Though not a model of clarity, *cf.*, *supra*, note 7, Shell, in its counterclaim, states a claim for common law indemnification. In its answer, Shell admitted that it supplied catalyst to HOVIC and to HOVIC's refinery and then, in its counterclaim, asserted that Mr. Willie's lawsuit concerned his alleged exposure to toxic substances, including to catalyst. Shell further alleged Litwin ordered, purchased, and used Shell's products at the refinery, and that the jury may conclude that it was Shell's actions or inactions that caused or contributed to Mr. Willie's harm. Litwin, in its answer to Shell's counterclaim, admitted Shell's allegations regarding Mr. Willie's lawsuit, but denied every other allegation, including Shell's claim that Litwin failed to warn others, specifically Mr. Willie, and that Litwin was under a duty to protect Shell from liability from Mr. Willie. Lastly, Shell also

alleged that it was unaware of any defect in its products at all times "relevant" to when Mr. Willie claimed to have been injured, and that it was Litwin who failed in its duty to warn others and instruct them on how to use Shell's products safely. Consequently, "Shell may be solely vicariously liable to Plaintiff . . . for the conduct of Litwin." (Shell's Ans. & Countercl. 11, ¶ 9.)

These allegations, all of which Litwin denies, state a claim for indemnification under the common law. It may be rare that a purchase or a supplier of a product can prevail on a claim for indemnify against the manufacturer. More often than not, it is the manufacturer who must indemnity the supplier. Here, Litwin's motion seeks only to test whether Shell's counterclaim for common law indemnification is plausible. Given the absence of any controlling or even persuasive precedent on the question of whether, under Virgin Islands law, a manufacturer can assert a claim for common law indemnification against a supplier or user of its products, the Court prefers to err on the side of caution and allow the claim to proceed. *Cf. Abdallah v. Abdallah*, 359 F.2d 170, 5 V.I. 507, 516 (3d Cir. 1966) ("As a general rule, a party may have as many remedies as the law gives provided they are consistent." (citation omitted)). Whether Shell can ultimately satisfy the high burden and *prove* that the supplier should indemnify the manufacturer is not at issue yet.

### 3. SET-OFF

■ Lastly, the Court concludes that the soundest rule for the Virgin Islands is to continue to recognize the right to assert or demand a set-off. But Litwin is correct that Shell failed to state a claim or cross-demand for set-off. "Shell must identify the debt which is the cause of the claimed set-off and they have not." (Mot 8.)

In its counterclaim, Shell asserted — without any factual support — that "Shell is entitled to . . . set off against Litwin the amount of any claims ultimately against Shell." (Ans. & Countercl. 11, ¶ 12.) In opposition to Litwin's motion, Shell states that "Litwin and Mr. Willie have either reached a settlement agreement, or are in the process of reaching a settlement agreement." (Opp'n 4.) "Litwin, however, cannot have it both ways," Shell argues. If "Litwin continue[s] to pursue third-party clams against Shell," then "Shell is entitled to a set-off." *Id.* This is not a demand for set-off at common law.

■ Set-off requires mutual debts or obligations from different transactions between the same parties. "By definition, a set-off requires mutual debts. . . . 'A set-off is only applicable to cases where the debtor and the creditor "owe" one another.' " *In re: Maytag Sales & Service, Inc.*, 23 B.R. 384, 390 (Bankr. N.D. Ga. 1982) (quoting *In re: Brendern Enters., Inc.*, 12 B.R. 458, 460 (Bankr. E.D. Pa. 1981)); *accord* Thomas W. Waterman, *A Treatise on the Law of Set-off Recoupment, and Counter-Claim* 4 (1869) ("The right of set-off is very different from a mere right to reduce or defeat the plaintiff's demand on account of some matter connected therewith."). Consequently, Shell's demand for set-off fails.

However, some courts hold that set-off is not a claim for relief, but rather a cross-demand. *See id.* ("Technically speaking, a set-off is a *counter demand* which the defendant holds against the plaintiff arising out of a transaction extrinsic to the plaintiff's cause of action." (emphasis added) (footnote omitted)); *but see id.* at 8 ("A set-off is a mutual independent *claim* which still continues to exist as such, and one which the parties did not intend should be appropriated to the satisfaction of an existing demand, but that each should have mutual causes of action; and of course mutual actions, if they pleased, against each other." (emphasis added) (footnote omitted)). Since claims are dismissed and demands are stricken, *cf.* FED. R. CIV. P. 12(b)(6) & 12(f), the Court construed Litwin's motion to dismiss as a motion to strike Shell's demand for set-off. *Accord Obabueki v. IBM*, 145 F. Supp. 2d 371, 379 n.15 (S.D.N.Y. 2001) ("While plaintiff moves to 'dismiss' certain of IBM's and Choicepoint's affirmative defenses as part of his motion for summary judgment, the Court construes plaintiff's motion as a motion to strike such defenses pursuant to FED. R. CIV. P. 12(f)."); *cf. JP Morgan Chase Bank v. Rodrigues*, 109 Conn. App. 125, 952 A.2d 56, 60 (2008) ("The defendants claim that the court improperly granted the plaintiff's motion to strike their counter-claim and setoffs. We disagree. The court granted the plaintiff's motion to strike the defendants' counterclaim. It concluded, inter alia, that it did not arise from the same transaction as the complaint." (paragraph break omitted)). *But cf.* SUPER. CT. R. 34 ("All claims in the nature of recoupment, set-off, cross-action, or any other claim for relief . . . shall be asserted in an answer as a *counterclaim.*" (emphasis added)).

## CONCLUSION

■ For the reasons stated above, the soundest rule for the Virgin Islands is to continue to recognize common law indemnification and common law contribution as claims for relief. Likewise, continuing to recognize the right to assert or demand a set-off is also sound.

■ However, because a third-party defendant cannot assert a contribution claim against a third-party plaintiff in a third-party action for contribution where there is no risk that the third-party defendant will have liability to anyone other than the third-party plaintiff, the Court granted Litwin's motion (construed as a motion for judgment on the pleadings) as to Shell's counterclaim for contribution. Mr. Willie did not assert his claims against Shell and none of Shell's third-party co-defendants counterclaimed against Shell for contribution. Therefore, Shell has failed to state a plausible counterclaim for contribution against Litwin.

■ Similarly, the Court also granted Litwin's motion to dismiss (construed as a motion to strike) as to Shell's counter-demand/claim for set-off. Shell failed to identify any debt or mutual obligation in its answer and counterclaim between it and Litwin. Set-off requires the existence of a mutual debt between the same parties but from another transaction unrelated to the action before the court. Consequently, Shell's set-off demand fails. Accordingly, the Court ordered Shell's demand for set-off stricken.

■ Lastly, the Court denied Litwin's motion to dismiss (again construed as a motion for judgment on the pleading) as to Shell's counterclaim for common law indemnification. Shell alleged sufficient facts in its answer and counterclaim regarding its relationship with Litwin, Litwin's knowledge of its products, Litwin's knowledge that others may have misused its products, and Litwin's duty to protect Shell from liability. Given the absence of controlling precedent on downstream liability between manufacturers and suppliers of goods and products, and erring on the side of caution, the Court finds that Shell has plausibly stated a common law indemnification claim. Accordingly, the Court denied Litwin's motion and allowed Shell's counterclaim to proceed. Whether Shell can prove, ultimately, that a manufacturer should be indemnified by a supplier or purchaser under Virgin Islands common law must still be determined.

111